Thomas James **FISHER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 790–92.

Court of Criminal Appeals of Texas,
En Banc.

March 31, 1993.

Jose M. Guerrero, Warren A. Wolf, San Antonio, for appellant.

Steven C. Hilbig, Dist. Atty., and Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, Robert Huttash, State's Atty., Austin, for State.

### OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

In November 1989, a Bexar County jury found appellant, Thomas James Fisher, guilty of murder, although neither the victim's body nor remains were ever found and identified.[1] The trial court assessed appellant's punishment at imprisonment for 30 years. The Fourth Court of Appeals later affirmed the trial court's judgment of conviction. *Fisher v. State*, 827 S.W.2d 597 (Tex.App.—San Antonio 1992). After appellant filed a petition for discretionary review, the court of appeals issued a second opinion, as authorized by Texas Rule of Appellate Procedure 101, but the court of appeals' judgment affirming the trial court remained unchanged. *Fisher v. State*, 830 S.W.2d 831 (Tex.App.—San Antonio 1992). We granted appellant's petition for discretionary review to determine whether, in a homicide prosecution, the State must prove that the victim's body or remains were found and identified. See Tex.R.App.Proc. 200(c)(2). We will affirm.

### The Evidence

Because the parties' arguments and the court of appeals' disposition of those arguments are best understood in light of the evidence presented at the guilt/innocence phase of appellant's trial, we turn first to a discussion of that evidence and what it

---

1. As we will explain, portions of a human body were found by police officials, but those portions could not be positively identified as those of the victim.

established. The State's evidence consisted of numerous exhibits and the testimony of 23 witnesses, including several San Antonio police officials, a Bexar County medical examiner, a physical anthropologist, several friends of appellant and the victim, a neighbor of appellant, appellant's ex-wife, the victim's mother, her banker, her real estate agent, and her mailman. Appellant presented no evidence at the guilt/innocence phase of his trial.

Viewed in the light most favorable to the jury's verdict, the evidence in question established the following: On the evening of Saturday, November 5, 1988, appellant, a San Antonio resident, visited his ex-wife and daughter, who were also San Antonio residents, at their home. While appellant was there, his 32-year-old live-in girlfriend, B— B—, telephoned at least twice, sounding "a little irritated" and "a little upset with him." Appellant left his ex-wife's home at around 10:00 p.m.

At around 6:00 p.m. on either Sunday, November 6, or Monday, November 7, one of appellant's neighbors saw "a carpet cleaning truck" parked in the driveway of appellant's home. The neighbor also saw "hoses coming out of the side" of the vehicle and going "into the garage."

At around 9:00 a.m. on Monday, November 7, appellant telephoned a friend, Caesar Marquez, at Marquez' home in San Antonio and expressed a need to speak with him in person. Marquez invited appellant over, and appellant arrived alone in his car about an hour later. When appellant arrived, Marquez and his brother were on the second floor of a house they were building next door to Marquez' home. Through a window, Marquez and his brother both saw appellant exit his car, walk to an alley behind Marquez' two lots, and "spread some sort of dust or ashes" from one or two small plastic bags that appellant had carried from the car. When appellant had finished dumping the material onto the ground, he walked the short distance to the Marquez residence, where Marquez' wife directed him to the two-story house being built next door. Marquez and his brother met appellant at the doorstep of the house

they were building and followed him back to his car. Marquez noticed that appellant had "some scratches" across his forehead and his cheeks and that he "had a small bruise beneath his left eye."

Appellant took two half-full trash bags out of his car and handed one to Marquez, instructing him to place it next to his own trash for pick up. Appellant placed the other bag beside Marquez' trash himself. Appellant then took out of his car a bright yellow suitcase, which was missing its handle, and also handed it to Marquez for placement with the other trash.

Appellant told Marquez he needed to make two telephone calls and that he preferred to use a telephone at a nearby convenience store. He also told Marquez that he needed to speak with him privately. Marquez agreed to accompany appellant to the store, and they left together in appellant's car. Upon arriving at the convenience store, appellant asked Marquez whether he had ever done anything illegal, and Marquez replied that he had not. Appellant then made one or two telephone calls, returned to the car, and told Marquez that he had done something he was "not very proud of." He then confessed to Marquez that he had killed his girlfriend, B— B—.

Over the next hour and a half, appellant and Marquez "drove and drove" on the west side of San Antonio, while appellant "look[ed] for a place to dump some more things," including a bright yellow suitcase handle with B— B—'s name on it. During this time, appellant explained to Marquez that B— B— had become upset with him at their residence the previous Saturday night and had pulled a gun on him, threatening to kill him; that he had grabbed her and strangled her with an electrical cord, letting her go before she died; that he had then drowned her in a bathtub that was already filled with water; that he later cut off her head, fingers, and one arm and had tried putting the arm down the garbage disposal but that "it just wouldn't go"; and that he had burned her fingers on his stove so that her body, if found, could not be identified.

Later that day, after appellant had returned Marquez to his home, Marquez went to the alley where appellant had emptied the small plastic bag(s). Marquez found charred bones and ashes scattered "right where [appellant had] walked," although the alley itself had not been burned.

On Tuesday, November 8, Marquez notified the San Antonio police of what he had learned, and police officials went to Marquez' residence and seized the bones as evidence. Subsequent expert examination of the bones revealed them to be a complete set of finger and thumb bones deliberately cut from the body of an individual fourteen years of age or older.

On Wednesday, November 9, appellant was arrested. Shortly after the arrest, San Antonio police searched appellant's home and seized a man's shirt, a kitchen garbage disposal, and a plastic, J–shaped plumbing trap. Subsequent expert chemical analysis of the three items revealed they all contained significant traces of blood, probably of recent origin.

The evidence at appellant's trial also established that B— B— had had a strained relationship with appellant in the months preceding her disappearance; that she had had very little money and no operating motor vehicle of her own during that time; that two close friends who had been in regular contact with her had neither seen nor heard from her since early November 1988; that she had not picked up her mail since September or October 1988 and had not left a change of address with the United States Postal Service; that there had been no activity in her two bank accounts since October 1988; and that since October 1988, she had made no mortgage payments on a parcel of land she owned, although she had previously made virtually all such payments in a timely fashion.

### The Arguments

Appellant argues that the evidence presented at his trial was insufficient, under both Texas common law and the Fourteenth Amendment to the United States Constitution, to support his conviction for murder. With respect to the common law, appellant argues the State failed to prove a critical aspect of the corpus delicti of the crime charged in that the State failed to produce and identify B— B—'s body or remains. Appellant contends that both Article 1204 of the 1925 Penal Code and this Court's case law require that the State produce and identify the body or remains of the deceased in all murder prosecutions.[2] Appellant contends further that the Legislature never expressly repealed Article 1204 and that "[a]bsent an express repeal, [this] Court must presume the Legislature intended the old statute to remain in operation." See also *Gibbs v. State*, 819 S.W.2d 821, 833 (Tex.Cr.App.1991) (stating that aspect of corpus delicti of murder is production and identification of body or remains of deceased), cert. denied, — U.S. —, 112 S.Ct. 1205, 117 L.Ed.2d 444 (1992); *Baldree v. State*, 784 S.W.2d 676, 687 (Tex. Cr.App.1989) (same), cert. denied, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990); *Soffar v. State*, 742 S.W.2d 371, 375 (Tex. Cr.App.1987) (same), cert. denied, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206 (1989).

The State argues in response, first, that Article 1204 was in fact expressly repealed by the Legislature in 1974 and that "the law of this state no longer mandates that the body of the deceased be found and identified in order to obtain a murder conviction;" second, that this Court's recent comments regarding the necessity of producing and identifying the victim's body or remains in all murder prosecutions were simply erroneous dicta; and third, that the evidence at appellant's trial was certainly sufficient to support appellant's conviction under both state and federal law.

The court of appeals, in its first opinion in this cause, disposed of appellant's contentions thusly:

[Article 1204] did not survive the implementation of the revised Texas Penal

---

**2.** Article 1204 provided: "No person shall be convicted of any grade of homicide unless the body of the deceased, or portions of it, are found and sufficiently identified to establish the fact of the death of the person charged to have been killed."

Code, which took effect on January 1, 1974. We find that by repealing article 1204, the legislature effectively rejected the requirement that the body of the deceased be found and identified. With the repeal of article 1204, the corpus delicti requirements in a murder prosecution reverted to those established by law for all other crimes.

\* \* \* \* \* \*

A close examination of the opinions cited by appellant reveals that the Texas Court of Criminal Appeals has not resolved the issue of whether, in light of the repeal of article 1204, the State must still produce and identify the body or remains of the body of the deceased in order to convict an individual of murder.

\* \* \* \* \* \*

We hold that as a result of the legislative repeal of article 1204, the State's inability to produce and identify the victim's body does not preclude a conviction for murder so long as the corpus delicti of the offense is proven by way of circumstantial evidence.

*Fisher v. State,* 827 S.W.2d at 599, 601, and 605 (citations omitted). In its second opinion, the court of appeals explained further:

While an uncorroborated extrajudicial statement of a defendant is insufficient to establish the corpus delicti of a crime, if there is some evidence corroborating a confession, the confession may be used to establish the corpus delicti.... The corpus delicti does not need to be proven independently of an extrajudicial confession; there need only be evidence corroborating the confession.

In our case, there was evidence corroborating appellant's admissions to Marquez that he murdered [B__ B__]. Additionally, that evidence ... and the extrajudicial admission sufficiently supported the jury's finding beyond a reasonable

doubt that appellant committed the offense.

*Fisher v. State,* 830 S.W.2d at 832 (citations omitted).

### The Relevant Law

 The due process clause of the Fourteenth Amendment requires that every state criminal conviction be supported by evidence that a rational factfinder could accept as sufficient to prove all the elements of the offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). Under the Fourteenth Amendment, therefore, our task is to consider all the record evidence, direct and circumstantial, in the light most favorable to the jury's verdict, and to determine whether, based on that evidence, any rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "If, based on all the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal." *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Cr.App.1992).

 In addition to the due process guarantee, the common law corpus delicti rule holds that no criminal conviction can be based upon a defendant's extrajudicial confession *unless* the confession is corroborated by independent evidence tending to establish the corpus delicti.[3] *Gribble v. State,* 808 S.W.2d 65, 70–71 (Tex.Cr.App. 1990) (plurality opinion), cert. denied, —— U.S. ——, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991); *Brown v. State,* 576 S.W.2d 36, 42–43 (Tex.Cr.App.1978); *Watson v. State,* 154 Tex.Crim. 438, 227 S.W.2d 559, 562 (App. 1950); see 1 J. Strong (ed.), *McCormick on Evidence* § 145 (4th ed. 1992). The rule does not require that the independent evi-

---

**3.** The primary purpose of the corpus delicti rule "is to assure that no person [is] convicted without some independent evidence showing that the very crime to which he confessed was [actually] committed [by someone]." *Gribble v. State,* 808 S.W.2d 65, 71 (Tex.Cr.App.1990) (plurality opinion), cert. denied, —— U.S. ——, 111

S.Ct. 2856, 115 L.Ed.2d 1023 (1991). The rule also has the salutary effect of encouraging police investigatory practices other than simply the interrogation of suspects. See Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession,* 103 U.Pa.L.Rev. 638, 642–649 (1955).

dence fully prove the corpus delicti, only that it tend to prove the corpus delicti. *Self v. State*, 513 S.W.2d 832, 835–837 (Tex. Cr.App.1974); *Wood v. State*, 142 Tex. Crim. 282, 152 S.W.2d 335, 339 (App.1941).

■ The corpus delicti of a crime— *any* crime—simply consists of the fact that the crime in question has been committed by someone. *Gribble v. State*, 808 S.W.2d at 70 (plurality opinion); *Bridges v. State*, 172 Tex.Crim. 655, 362 S.W.2d 336, 337 (App.1962); *Watson v. State*, 227 S.W.2d at 562. More precisely,

> the *corpus delicti* [of a crime] embraces the fact ... that somebody did the required act or omission with the required mental fault, under the required (if any) attendant circumstances, and producing the required (if any) harmful consequence, without embracing the further fact (needed for conviction) that the defendant was the one who did or omitted that act or was otherwise responsible therefor.

1 W. LaFave & A. Scott, *Substantive Criminal Law* § 1.4 at 24 (2nd ed.1986). Thus, we reaffirm our prior holdings that the corpus delicti of murder is established if the evidence shows (a) the death of a human being (b) caused by the criminal act of another. *Jackson v. State*, 652 S.W.2d 415, 419 (Tex.Cr.App.1983); *Brown v. State*, 576 S.W.2d at 43; see W. Steele & R. Kollman, *The Corpus Delicti of Murder After Repeal of Article 1204—Part 2*, 20 Voice for the Defense, no. 5, pp. 17, 18 (July 1991).

■ Under the corpus delicti rule, our task as an appellate court is to consider all the record evidence, other than appellant's extrajudicial confession to Marquez, in the light most favorable to the jury's verdict and to determine whether that evidence tended to establish that B— B— was actually murdered by someone. We need not concern ourselves with the fact that the State failed to produce and identify B— B—'s body or remains, because production and identification of the victim's body or remains is not part of the corpus delicti of murder. Accord, R. Perkins & R. Boyce, *Criminal Law* 144–145 (3rd ed.1982); M.

Wheeler, *Invitation to Murder?: Corpus Delicti, Texas–Style*, 30 S.Tex.L.Rev. 267, 281 (1989).

■ It is true, as appellant points out, that Article 1204 once required the production and identification of the body or remains of the deceased in all murder prosecutions. See footnote two, ante. We have recognized repeatedly, however, that Article 1204 was expressly repealed by the Legislature in 1974. Act of June 14, 1973, 63rd Leg., R.S., ch. 399, § 3, 1973 Tex.Gen. Laws 991, 994; *Streetman v. State*, 698 S.W.2d 132, 134–135 fn. 1 (Tex.Cr.App. 1985); *Easley v. State*, 564 S.W.2d 742, 747 (Tex.Cr.App.), cert. denied, 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978); *Valore v. State*, 545 S.W.2d 477, 479 fn. 1 (Tex.Cr. App.1977).

Further, as appellant points out, we have stated in certain recent opinions that one aspect of the corpus delicti of murder is the fact that the body or remains of the deceased is actually found and identified. However, a close examination of those statements reveals that they constituted dicta *and* that they all cited *Self v. State*, 513 S.W.2d 832 (Tex.Cr.App.1974), as authority for the proposition in question. Furthermore, a careful reading of *Self* reveals that it relied upon Article 1204 as authority for the proposition. See *Self v. State*, 513 S.W.2d at 834. With the demise of Article 1204 in 1974, the burden on the State to produce and identify the body or remains of the deceased was lifted. Any language to the contrary in our prior opinions is erroneous and is now disavowed.

Finally, before we can determine whether the record evidence was sufficient to support appellant's conviction under the Fourteenth Amendment and the corpus delicti rule, we must first determine precisely what facts the State was required to prove to obtain a conviction. Appellant was charged with violating Texas Penal Code § 19.02(a)(2), which provides that a person commits the offense of murder if (a) he intends to cause serious bodily injury and (b) commits an act clearly dangerous to human life that (c) causes the death of an individual. The jury charge, in conformity

with § 19.02(a)(2) and the indictment, authorized a finding of guilt if the jury found beyond a reasonable doubt that, on or about November 5, 1988, appellant, intending to cause serious bodily injury to B— B—, submerged her under water, thereby causing her death. In accordance with Texas Penal Code § 1.07(34), the jury charge defined "serious bodily injury" to be "bodily injury that creates a substantial risk of death or that causes death."

### Conclusion

With respect to the Fourteenth Amendment's due process guarantee, we have no difficulty determining the record evidence was sufficient. Marquez' testimony regarding appellant's oral confession was by itself sufficient evidence to warrant a rational finding of appellant's guilt of all the elements of the offense beyond a reasonable doubt.

■ We also have no difficulty determining the record evidence was sufficient to satisfy the corpus delicti rule. Viewed in the light most favorable to the verdict, the State's evidence established that B— B— vanished suddenly and without a trace; that her personal affairs (receipt of mail, friendships, payment of debts, etc.) were left strangely unresolved; that she had had a strained relationship with appellant in the months before her disappearance; that she had had neither sufficient money nor a vehicle with which to leave San Antonio; that appellant was seen around the time of her disappearance (a) attempting to dispose of her property (a suitcase) under unusual circumstances, (b) in apparent possession of bones from severed human hands, and (c) with indications (facial bruise, scratches) that he might have been in a struggle with someone; that the carpet in B— B—'s and appellant's home was steam cleaned around the time of B— B—'s disappearance, suggesting that the carpet might have been bloodstained; and that significant amounts of blood of recent origin were found in B— B—'s and appellant's home. Reasonable persons could conclude that this evidence tended to prove that B— B— was killed by criminal means.

Having determined that the evidence adduced at appellant's trial was sufficient to support his conviction for murder, we AFFIRM the judgment of the court of appeals.

CLINTON, J., would affirm the judgment of the court of appeals under the rubric of *Arcila v. State*, 834 S.W.2d 357 (Tex.Cr.App.1992).