# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00188-CR

**Calvin Oliver, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 0992924, HONORABLE BOB PERKINS, JUDGE PRESIDING

Calvin Oliver appeals from his conviction for murder. Tex. Penal Code Ann. § 19.02(b) (West 1994). After the jury found him guilty, it assessed punishment at life imprisonment in the Texas Department of Criminal Justice Institutional Division and a $10,000 fine. In two issues on appeal, appellant challenges the sufficiency of the evidence to support his conviction in general and in particular challenges the sufficiency of the evidence to prove the corpus delicti of the offense. We will affirm the trial court's judgment.

## Factual Background

Tiffany Rowles testified about the events that she observed around Thanksgiving of 1997. She and her boyfriend, Sean McNatt, had been friends with appellant and Jennifer Stover for about five or six months. Appellant and Stover had had an on-again, off-again relationship; Stover had been living in Dallas for awhile just before the described events. Rowles and McNatt went to appellant's residence to have dinner with appellant and Stover two or three

days before Thanksgiving.[1] During dinner, Stover and appellant fought about a journal she kept, apparently because it had information about a possible relationship between Stover and someone other than appellant. Appellant began to tear pages out of the journal and scream at her but had not physically abused her at the time that Rowles and McNatt left. Rowles and McNatt returned the next day and witnessed appellant force feed Stover prescription drugs at gunpoint. From that point on, Rowles said she never saw appellant without his gun, which she recognized as a .357 magnum. While he was making Stover take the drugs, he was punching her in the face and stomach. He would not allow Rowles to write down the name and address of Stover's family as Stover wanted so that Rowles could contact them. Rowles also testified that appellant "cut" Stover, poured Clorox over her wounds, and forced her into a tub of cold water while blowing a fan on her. He poured liquid detergent down Stover's throat when she was unconscious to make her choke and revive. Appellant also told Rowles that he had ripped out Stover's nipple rings and inserted a hot curling iron and nunchucks, a martial arts weapon, into Stover's vagina. Appellant continued torturing Stover for about three days. The last time Rowles saw Stover she was alive as far as Rowles could tell but was beaten and very badly hurt. The reason that Rowles did not go for help at that point was that appellant had threatened her and her son.

Approximately a day after Rowles last saw Stover, appellant called Rowles's home and asked Rowles and McNatt to come back over to his trailer. Stover was no longer there.

---

[1] Some of the time sequences were vague, both in the testimony at trial and in the statements given at the time of the events because Rowles and McNatt were heavy cocaine users at the time. Appellant sold them cocaine, which was one reason why they were visiting him. They testified about their drug use in front of the jury.

Appellant first said that Stover had gone back to Dallas and then that he had "sold" her to someone in Mexico. Later that afternoon, a neighbor's young child came to appellant's residence complaining that there was a strange smell coming from his garage.

McNatt generally testified to the same events as Rowles. Further, McNatt said he and appellant were watching the news together and appellant said that "they hadn't found her yet." He then said, "Yeah, she's gone." Appellant first told McNatt that he had "sold" Stover to some friends in Austin for "drugs or money." He later said that Stover was dead and told McNatt to smell the trunk of his car. McNatt said that appellant's garage and car trunk smelled like a dead animal, only worse. Rowles went into the garage with McNatt and the smell was so bad that she ran to the bathroom and threw up. McNatt came into the bathroom at that point and said that Appellant said that he "needed someplace to dump her" and that if Rowles found out he would kill her too because he knew a woman would be the first person to go to the police. Later, when McNatt asked how he had killed Stover, appellant responded that he had made her perform oral sex on him while she was semi-conscious and he made her choke on his semen. Rowles and McNatt eventually left and called the police.

Officer Don Rios[2] was the first person to interview Rowles and McNatt. He described Rowles as extemely scared and crying hysterically. He described McNatt as appearing to be in shock. Partway through taking the report, he called for a detective due to the severity of the events described and also called for another officer to help watch the house because of the fear Rowles and McNatt expressed.

---

[2] All detectives and officers are employees of the Travis County Sheriff's Department.

Detective Jim Anderson was called to come to the Travis County Sheriff's central office to investigate further. He took Rowles's statement. Anderson then began searching for appellant's vehicle. Anderson went to appellant's residence where he encountered appellant and a friend. Anderson asked for consent to search the trailer, explaining to appellant that the search was related to suspected foul play in Stover's disappearance.[3] On entering, based on his initial viewing of the scene, Anderson called for a team of crime scene technicians. Anderson noticed that the carpets had been cleaned; the carpet in the master bedroom was still wet. The detective found half a gallon of carpet shampoo, wet rags that had been used to clean the carpet, and vacuum parts in appellant's sink. Anderson found evidence corroborating the statements from Rowles and McNatt. He found nunchucks on appellant's dresser which appeared to have hair on them, an empty bottle of Stover's prescription medicine, and an empty gun holster that could have held the described gun. The gun was not found at that time, but was later recovered with one bullet missing. Detective Manuel Villanueva described the search of the garage that revealed what at first appeared to be a wig with a pony-tail holder in the hair; a later inspection revealed there was no liner as would be expected with a wig and the hair looked like it had been cut off. More of Stover's pill bottles were found, as well as a purse.

Detective Richard Wines accompanied Anderson to headquarters where he interviewed McNatt. He described finding an indentation in the bathroom wall that would have matched a bullet being fired into the wall or ricocheting into the wall. There was also an

---

[3] Appellant consented to the search while an officer was in the process of obtaining a search warrant.

indentation beside the toilet that would have been consistent with someone being pushed or falling against the wall. He testified that he was familiar with the smell of a human body as it began to decompose and that was the smell he smelled when he opened the trunk of appellant's car.

Deputy Hughes described the test on a spare tire cover found in appellant's car trunk. The crime scene test showed positive results for blood. This blood was later tested against a known pre-disappearance medical specimen from Stover and produced a positive DNA-match that identified the blood as hers.

At that point, February 1999, an arrest warrant for appellant was executed. Appellant was arrested in July 1999 near St. Louis, Missouri. After being read his rights, Appellant made two written, signed statements. In one, he said that he and Stover had spent a few days together, he asked her to leave, and he had not seen her since. In the second, made the same day, appellant said that Stover was depressed and committed suicide by taking an overdose of her prescription medicine. Appellant said he tried to save her, but she died. He wrapped her body in a blanket and put her in the trunk of the car but did not remember much else. At some point he drove somewhere with the body and disposed of it but did not remember where.

There was testimony that Stover was still listed with the Department of Public Safety Missing Persons Clearinghouse and regular checks on her social security number failed to reveal any activity using that number. Stover was the mother of two children and her former husband testified that the regular contact she had always had with the children ceased. No one else in Stover's family had heard from her since November 1997. Several witnesses testified to

5

witnessing incidents of abuse by appellant toward Stover; one testified that Stover was afraid of appellant.

**Discussion**

*Corpus Delicti*

In his first issue, appellant argues that, because it cannot be confirmed physically that Stover is dead, the evidence is insufficient to establish the corpus delicti of the offense. We disagree.

In general, the corpus delicti of an offense consists of the fact that someone committed the crime in question. The corpus delicti of murder is established if the evidence shows the death of a human being which was caused by the criminal act of another. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997), *cert. denied*, 522 U.S. 844 (1997); *Fisher v. State*, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993); *Smith v. State*, 968 S.W.2d 452, 461 (Tex. App.–Amarillo 1998), *vacated & remanded on other grounds*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999). The State is not required to produce and identify the body or remains of the decedent in order to establish the corpus delicti. *McDuff*, 939 S.W.2d at 614; *Fisher*, 851 S.W.2d at 303. The State's inability to produce and identify the victim's body does not preclude a murder conviction as long as the corpus delicti of the offense is proven by way of circumstantial evidence. *See McDuff*, 939 S.W.2d at 614; *Fisher*, 851 S.W.2d at 303.

Under the common law corpus delicti rule, an extra-judicial confession alone is insufficient to support a murder conviction. *Fisher*, 851 S.W.2d at 302; *Jackson v. State*, 652

6

S.W.2d 415, 419 (Tex. Crim. App. 1983). However, if there is some evidence tending to corroborate the confession, then the confession may be used to establish the corpus delicti. *Fisher*, 851 S.W.2d at 302; *Smith*, 968 S.W.2d at 461. The corpus delicti need not be proven independently of the extra-judicial confession; there need only be independent evidence tending to prove the corpus delicti. *Fisher*, 851 S.W.2d at 303-03; *Smith*, 968 S.W.2d at 461. The task of the reviewing court is simply to consider all the evidence in the light most favorable to the conviction to determine whether the evidence tended to show that the death of the named complainant was caused by the criminal act of the charged party. *Fisher*, 851 S.W.2d at 303; *Smith*, 968 S.W.2d at 461.

The fact finder had sufficient evidence before it to establish the corpus delicti of murder. The last time that Stover was seen was at appellant's residence; alive, but injured. The jury had before it the testimony of two eyewitnesses[4] to events occurring around Thanksgiving, 1997. As set out above, they testified to extensive torture committed by appellant. The police found physical evidence that corroborated the witnesses' stories: they found evidence of extensive cleaning in the areas that corresponded to the account of events as well as the other physical evidence that corroborated both stories. The police discovered blood in the trunk of the car, which proved a positive DNA match for Stover. One detective testified that he recognized the smell of a body that had begun to decompose when he examined the trunk. The jury had evidence

---

[4] Appellant contends the witnesses are not credible because they are drug addicts. The jury had that information before it; it is their province to weigh the credibility of the evidence. The jury had before it extensive physical evidence that corroborated the eyewitness' testimony.

7

that Stover had not been seen or heard from, nor had her Social Security number been used for any reason.

Appellant told several versions of what occurred to Stover. In one, she simply left. In another, he "sold" her to a gang in Austin for drugs. In another, she died accidentally, he panicked, and could not remember where he hid the body. McNatt's testimony about appellant's "needing a place to dump her," appellant's concern that a woman would be likely to go to the police, and statement that "Rowles would be next" supplied a basis to infer that he had killed Stover. In talking to McNatt, he first said, after hearing a news report: "Oh good, they have not found her yet." He then described to McNatt how he had killed her. The jury was entitled to choose which of appellant's versions of events to believe, including the one in which he confessed to killing her.

### *Legal and Factual Sufficiency*

In his second issue, appellant challenges the legal and factual sufficiency of the evidence to prove guilt beyond a reasonable doubt. When the court reviews the legal sufficiency of evidence, it does so in the light most favorable to the verdict to determine whether a rational finder of fact could have found all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999). If there is evidence that establishes guilt beyond a reasonable doubt and if the fact finder believes the evidence, the reviewing court is not in a position to reverse the judgment on sufficiency of the evidence grounds. *Moreno v. State*, 755

8

S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury as trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of the witnesses, and to determine the weight to be given any particular evidence. *Id.*

When the court reviews the factual sufficiency of the evidence, it puts aside the prism of the "light most favorable to the verdict." *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.–Austin 1992, pet. ref'd untimely filed). The reviewing court considers all the evidence in a neutral light and reverses if the verdict is so contrary to the overwhelming weight of the evidence as to be unjust. *Johnson*, 23 S.W.3d at 7; *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); *Clewis*, 922 S.W.2d at 134. The jury's verdict, however, should still be accorded due deference so that the reviewing court does not, in effect, become the thirteenth juror. *See Clewis*, 922 S.W.2d at 133. The appellate court does not interfere with the jury's resolution of conflicts in the evidence or pass on the weight or credibility of testimony. Unless the record clearly reveals that a different result was appropriate, an appellate court should defer to the jury's determination concerning what weight to give contradictory testimonial evidence because the jurors' resolution of such conflicts often turns on an evaluation of credibility and demeanor by the jury. *See Johnson*, 23 S.W.3d at 8.

Appellant challenges the sufficiency of the evidence based in part on the fact that Rowles and McNatt were drug addicts. However, that information was before the jury and it had the opportunity to evaluate the witnesses' credibility in light of that knowledge. Witness credibility is a jury decision; our review of the record does not reveal a result other than deference

9

to the jury's determination is appropriate. *See Johnson*, 23 S.W.3d at 8. We have extensively detailed the evidence under issue one; extensive circumstantial evidence as well as two admissions of guilt to McNatt provide legally sufficient evidence to support the verdict. A neutral view of the evidence does not lead to the conclusion that the verdict is against the overwhelming weight of the evidence. The evidence is factually sufficient to support the verdict. Accordingly, we overrule appellant's second issue.

## Conclusion

We have reviewed the record and hold that the corpus delicti of murder was established and that legally and factually sufficient evidence supports appellant's guilt beyond a reasonable doubt. We affirm the judgment of conviction.

_____

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed:   December 7, 2000

Do Not Publish

10