NUMBER 13-05-308-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

WILLIE
MURPHY,                                                    Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

                  On appeal from the 347th District Court

                           of Nueces County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

      Before Chief Justice Valdez and Justices
Rodriguez and Garza

Memorandum Opinion by
Justice Rodriguez

 








This is a murder
case.  A jury found appellant, Willie
Murphy, guilty of murder.[1]
Appellant was sentenced to thirteen years in prison and assessed a $10,000
fine.  By one issue, appellant complains
of the factual sufficiency of the evidence to support the guilty verdict.  We affirm.

I .  Standard of Review

The sole question
to be answered in a factual sufficiency review is whether, considering all of
the evidence in a neutral light, a jury was rationally justified in finding
guilt beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004); Cain v. State,
958 S.W.2d 404, 410 (Tex. Crim. App. 1997) (providing that when performing a
factual sufficiency review, the reviewing court must examine all of the
evidence impartially).  We measure the
factual sufficiency of the evidence against a hypothetically correct jury
charge.  Adi v. State, 94 S.W.3d
124, 131 (Tex. App.BCorpus Christi 2002, pet. ref'd) (citing Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).








The evidence may
be factually insufficient in the following ways:  (1) where the evidence supporting the
conviction is itself too weak, standing alone, to support the finding of guilt
beyond a reasonable doubt; and (2) where the evidence contrary to the verdict is
so strong that the "beyond-a-reasonable-doubt" burden could not have
been met.  Zuniga, 144 S.W.3d at
484-85.  "Deference is given to the
jury verdict as well as to determinations involving the credibility and
demeanor of witnesses."  Id.
at 481.  We may not reverse a fact
finder's decision simply because we disagree with the result, Cain, 958
S.W.2d at 407, nor usurp the roll of the fact finder.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).  Unless the available
record clearly reveals a different result is warranted, a reviewing court must
defer to the fact finder's determination concerning the weight to be given
contradictory testimonial evidence.  Id.
at 8.  A reviewing court is authorized to
disagree with a fact finder's determination only when the record clearly
indicates such a step is necessary to prevent a manifest injustice.  Id. at 9.  A clearly wrong and manifestly unjust verdict
is one in which the jury's finding "shocks the conscience" or
"clearly demonstrates bias."  Zuniga
, 144 S.W.3d at 481.

II.  Analysis

By his sole
issue, appellant challenges the factual sufficiency of the evidence to support
his conviction.  He contends that the
evidence supporting the conviction is insufficient because it is too weak,
standing alone, to support the finding of guilt beyond a reasonable doubt.  Id. at 484.

A.  Corroboration of Confession








Appellant argues
that the lack of evidence corroborating appellant's oral confession renders it
too weak to support the conviction. 
However, to sufficiently corroborate a confession for murder, there must
only be independent evidence tending to establish the corpus delecti,
namely that the death was caused by a criminal act of another.  Fisher v. State, 851 S.W.2d 298,
302-03 (Tex. Crim. App. 1993) (en banc). 
Considering all the record evidence, other than appellant's confession,
in the light most favorable to the jury's verdict, we conclude the evidence
established that the victim was actually murdered by someone.[2]  See id. at 303.  Therefore, the confession is sufficiently
corroborated, and this argument fails.

B.  In-court Repudiation of Confession and Denial
of Homicide

Appellant also
argues that his in-court repudiation of his oral confession and his in-court
denial of the homicide render the confession too weak to support the
conviction.








During
appellant's videotaped confession, R.L. Garcia, Sr., detective with the Corpus
Christi Police Department, asked appellant to tell him what happened to the
victim.  Appellant stated that between 10
and 11 p.m. on Monday, November 3rd,[3]
he had been at the victim's apartment, which he referred to as "our
house", and the victim, who appellant repeatedly referred to as
"she," was getting ready to take a shower when they began
"fighting" each other with "towels and everything."  Appellant said that he started shoving the
victim "a bit," and the victim was to give a signal for appellant
"to stop," but appellant did not feel the signal that the victim
"normally" gave.  When the
victim stopped breathing, appellant started panicking.  Upon further questioning, appellant agreed,
nodding and saying "yeah" or "yes," that he and the victim
had been playing with towels as they had played once before, choking each other
with a towel in what is called autoerotic behavior.  The victim was supposed to give a signal, a
pinch on the arm, for appellant to stop. 
The victim failed to do so and passed out and died.  When asked the color of the towel used during
that time, appellant replied, "Green."  Detective Garcia asked in what room did that
occur, and appellant replied, "In our bedroom."  Detective Garcia then asked what kind of
bedding was present in the room, clarifying that he was asking if there was a "regular
mattress" or an "air mattress," "what kind of bedding,"
and appellant replied, "Just a regular mattress."  After the victim died, appellant said that he
started panicking, did not know what else to do, and had taken a knife and
started stabbing the victim in the neck. 
When asked why he stabbed the victim, if he was already dead, appellant
did not answer.  Later, he said that he
stabbed the victim "not to hurt her too bad."  Near the end of the interview, Detective Garcia
asked appellant if he wanted to tell him anything else.  Appellant replied, "Just to let her know
that I am sorry," and began crying.

At trial,
appellant testified that he had said he had killed the victim but that it was
not true.  When asked why he would tell
someone that he killed the victim if he did not do it, appellant responded as
follows:








Cause on the statement I gave, I knew only one
person would actuallyBwould know that I had nothing to do with it, cause
they know the way that me and that person, how close we were.  And sheBthat person know how fraction [sic] her son is on
the neck.  So if I did any kind of thing,
[the victim] would have like actedBwould have just reacted and punched any kind of sort
[sic].  So that is the only reason I gave
that kind of statement.

 

When asked what he thought would
happen when he told the police that he had killed the victim, appellant
answered that he thought he was going to "end up getting, like, maybe
probation or something like that." 
When defense counsel asked appellant why he would confess to something
he did not do, appellant responded, "I don't know."  When asked what was going through his mind
when he told Detective Garcia that he killed the victim, if he did not do it,
appellant said, "I really don't know what was going through my mind.  I was in shock and stunned that even they try
to pinpoint me on it.  And it was just
like me, justBI justBI just took time to snap on anything."  Appellant stated that he did not kill the
victim and was no where near his apartment the night that the victim was killed
and had only been there once before, in October.  He also testified that he was somewhere else
that night.  When the State's counsel
asked why he gave a statement if he did not do it, appellant replied that when
he found out what had happened, he was in a great state of shock.








A reviewing court
cannot reweigh the relative credibility of one piece of evidence verses the
other.  See Fernandez v. State,
805 S.W.2d 451, 456 (Tex. Crim. App. 1992) (en banc) (setting out that
unobjected‑to hearsay testimony had probative value and could be basis
for sustaining conviction even when the declarant recanted her statements at
trial).  Although appellant later
attempted to retract it, he confessed to killing the victim, and it is
"the responsibility of the factfinder at trial to assess the probative
force of each particular piece of evidence in its effort to determine if a
defendant is guilty beyond a reasonable doubt."  Id. at 455.

Once the trier of
fact has made its decision assessing and weighing the probative value of the
evidence in its determination of guilt or innocence, an appellate court does
not have the power to step in and reevaluate the probity of an individual item
of evidence in its review of the sufficiency of the evidence to support the
verdict. An appellate court has only the discretion to determine if any
rational trier of fact could have, based on the evidence admitted at trial,
found the essential elements of the offense beyond a reasonable doubt.

Id. at 456 (citations omitted).

The jury was in
the best position to determine appellant's credibility when he testified that,
without mistreatment or misconduct on the part of the police, he confessed to
murdering a close friend, giving details known only to persons who had seen the
crime scene, because he was "in shock."  We cannot now make our own credibility
determination, as appellant urges, between the portion of appellant's testimony
on the stand where he declared his innocence and appellant's videotaped
confession of guilt that was published to the jury.








Therefore,
deferring to the jury's determinations involving the credibility and demeanor
of witnesses, see Zuniga, 144 S.W.3d at 481, we conclude that the record
does not clearly indicate that we should usurp the roll of the fact finder to
prevent a manifest injustice.  See
Johnson, 23 S.W.3d 7.  Nothing in the
record suggests that the jury's decision to believe appellant's confession
rather than the portion of his testimony at trial in which he declared his
innocence, was irrational or resulted in a "manifest injustice."  We find no authority to support appellant's
contention, and he provides none.  This
contention also fails.

C.  Challenge to Confession as Unreliable and
Weak








Finally,
appellant asserts that his confession is unreliable and too weak to support a
finding of guilt beyond a reasonable doubt because:  (1) significant material detail that would be
expected in a full confession is absent; (2) appellant's statement that a
regular bed was on the floor of the bedroom conflicts with other evidence that
showed an air mattress; (3) appellant's first-estimated time of the homicide,
which was changed after a break was taken during the videotaped interview,
conflicts with testimony of a State witness; (4) conflict is apparent when
appellant wrote with his left hand during the interview and the medical
examiner suggested that the person who stabbed the victim used his right hand;
(7) appellant's fingerprints were absent from among those lifted from the apartment
and twenty-five of ninety-five latent prints lifted were left open; (8) no
genetic material matching appellant was found in the apartment and genetic
material of two separate persons found at the scene was not a match for
appellant or the victim; (9) police failed to compare genetic material
recovered at the scene with that of Mr. Trevino, also known as Chicago, a
person of interest in the case, and no written statement was taken from him;[4]
(10) no followup on a business card found outside the apartment was conducted;
(11) no murder weapon was found; and (12) there were no eyewitnesses.[5]  Appellant also complains that the evidence is
too weak to support the verdict in light of appellant's alibi that was
unchallenged by the State.[6] 








Appellant argues
that this conflicting evidence, as well as the lack of evidence, renders the
evidence too weak to support the verdict. 
However, evidence is not rendered insufficient when conflicting evidence
is introduced.  Machett v. State,
941 S.W.2d 922, 936 (Tex. Crim. App. 1996) (en banc).  The reviewing court must assume that the fact
finder resolved the conflicts, including conflicting inferences, in favor of
the verdict, and must defer to that resolution. 
Id.  Furthermore, although
appellant invites this Court to reweigh the evidence presented and consider it
in relationship to what was not presented, we choose not to do so.  Based on the contentions raised, our factual
sufficiency review in this case is to determine whether the evidence supporting
the conviction is itself too weak, standing alone, to support the finding of
guilt beyond a reasonable doubt.  See
Zuniga, 144 S.W.3d at 484-85.

Accordingly,
viewing the evidence in a neutral light and measuring the factual sufficiency
of the evidence against a hypothetically correct jury charge, we conclude that
the evidence supporting the verdict is not too weak to support the jury's
finding of guilt beyond a reasonable doubt as appellant argues.  From the evidence, the jury could reasonably
have found that by choking his victim with a towel and stabbing him with a
knife, appellant intended to kill him. 
Furthermore, the jury, being the sole judge of the credibility of the
witnesses, was free to accept or reject the evidence before it, and in doing
so, concluded that appellant was guilty of murder.  Accordingly, we conclude the evidence is
factually sufficient to support the jury's verdict.  Appellant's sole issue is overruled.

III.  Conclusion

We affirm the
judgment of the trial court.

 

NELDA V. RODRIGUEZ

Justice

 

Do not publish.

Tex. R. App. P. 47.2(b).

 

Memorandum Opinion delivered and 

filed this 20th day of July, 2006.

 

 

 











[1]A person commits murder if he
intentionally or knowingly causes the death of an individual.  Tex.
Pen. Code Ann. ' 19.02(b)(1) (Vernon 2003).





[2]Ricardo Ortiz, chief investigator
for the Nueces County Medical Examiner's Office, did a preliminary examination
of the body when he arrived on the scene. 
He testified that the man was lying nude, face down, on the floor of
what appeared to be a bedroom.  To his
knowledge, the body had not been moved before he arrived.  There had been what appeared to be a towel
wrapped around the man's head or neck. 
Ortiz pronounced the man dead.

 

Later, Dr. Ray
Fernandez, Medical Examiner for Nueces County, performed an autopsy on the
victim.  He noticed abrasions on the left
side of the body, at the forehead and left side of the neck.  There was a bruise at the left upper back, a
stab wound at the right side of the neck and a puncture wound at the right
lower neck.  The hyoid bone in the front
of the neck was fractured.  There was a
defensive type inside wound at the back of the wrist and another cut at the back
of the shoulder.  There were also
abrasions on the side of the neck, consistent with scraping along the surface
with some object, such as a towel.  The
cause of death was strangulation and a sharp wound to the jugular vein in the
neck.  In Dr. Fernandez=s opinion, it was a homicide.





[3]Appellant corrected the time and
day, between 1 and 2 a.m. on Tuesday, November 4th, in a later session of the
recorded confession.





[4]Detective Garcia testified that,
approximately one week after the homicide and before appellant gave his
confession, he talked with Mr. Trevino who said he was somewhere else.  He testified that Mr. Trevino's fingerprints
were taken and checked against the fingerprints at the crime scene.  No match was found.  Detective Garcia also stated that he talked
with a friend of Trevino's and was satisfied with the answers that person gave
and that "he had nothing to do with it, and that, possibly, Trevino had
nothing to do with it."  After
appellant gave a confession, the detective felt there was no need to proceed
with his investigation of Trevino.





[5]Additionally, without developing
this contention further or providing authority in support thereof, appellant
asserts that the confession was weak because he could not read and because
leading questions were asked.  While it
is not an element of the offense, appellant also complains that the confession
is weak and unreliable because the State offered no proof of any motive for
appellant to kill the victim.  In
accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will
only consider contentions that are supported by clear and concise arguments and
with appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(h).  Because this assertion is inadequately
briefed, we need not address it.





[6]Appellant asserts that his alibi
was unchallenged by the State.  However,
while no rebuttal witnesses were presented, the State's presentation during its
case in chief of appellant's own statement to the police which placed him at
the scene and committing the crime, shows that the State did not agree with
appellant's testimony at trial or with the testimony of his alibi witness.