

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-22-00200-CR

_____

PAUL ADAMS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 460th District Court
Travis County, Texas[1]
Trial Court No. D-1-DC-20-202363, Honorable Selena Alvarenga, Presiding

June 16, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Paul Adams, appeals his jury convictions for the offenses of murder and tampering with evidence. The jury recommended a 52-year sentence for the murder conviction and a 20-year sentence for the tampering conviction. The trial court entered

---

[1] Pursuant to the Supreme Court's docket equalization efforts, this case was transferred to this Court from the Third Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

judgment consistent with the jury's recommendations. We affirm the trial court's judgment.

## BACKGROUND

Appellant and Robin Hatcher began a romantic relationship in early 2019. Appellant frequently stayed at Hatcher's apartment throughout their relationship. Appellant has been diagnosed with anxiety, depression, schizo-affective disorder, bipolar disorder, and substance-induced psychosis. Hatcher has been diagnosed with bipolar disorder and schizophrenia, for which she had been prescribed medication. She has also had a long history of substance abuse. While the couple were sometimes off-and-on, they appeared to have a happy and healthy relationship.

On August 12, 2019, Hatcher left from her place of employment with a man presumed to be Appellant. After this point in time, Hatcher never returned to work or had any contact with friends or family. A default judgment was entered against Hatcher after she failed to appear for an August 27 eviction proceeding.

In the week following Hatcher's disappearance, Domonique, her daughter, went to Hatcher's apartment to check on her. Domonique found the apartment in disarray; she found food left out and rotting, clothes strewn about "everywhere," and one of Hatcher's wigs on the floor. Domonique described the state of the apartment as "unusual" in that Hatcher usually kept the apartment "clean." Domonique also testified that it was unusual to find Hatcher's wig on the floor because that was the wig Hatcher usually wore. Hatcher cared about her appearance and frequently wore wigs when in public. Also, Domonique

2

noted that Hatcher's medication was still in the apartment and that Hatcher was generally compliant in taking her medications.

Hatcher's family attempted to contact Hatcher through phone calls and social media. They asked neighbors if anyone had seen her. They posted flyers in the area around Hatcher's apartment and at a mortuary, but not at homeless shelters or churches. On August 16, Domonique contacted the Austin Police Department (APD) to perform a welfare check on Hatcher.

On August 23, Domonique made a formal report to APD that Hatcher was a missing person. As part of the missing person investigation, APD canvassed Hatcher's apartment complex. They also researched Hatcher in police and civilian databases and obtained her cell phone, Google, and Facebook records. Hatcher received Social Security benefits which were placed on a NetSpend card, but that card was not used after August 12. Hatcher also received financial assistance on a Lone Star card. This card was used on August 13 and 15. Video surveillance footage established that Appellant used the card on August 13, without Hatcher being present. It was further discovered that Appellant pawned Hatcher's cell phone on August 15. APD was unable to locate Hatcher or any indicia that she used her financial resources or social media after August 15.[2]

During its investigation, APD conducted multiple interviews with Appellant. The first of these occurred on September 10. Appellant told Detective Martin that he and

---

[2] The uses of Hatcher's Lone Star card on August 13 and 15 were the only financial transactions involving Hatcher's financial resources after August 12. No social media activity was found following August 12.

3

Hatcher had gotten into an argument and broken up in early August, and his subsequent efforts to contact Hatcher by phone had been unsuccessful. He stated that he assumed she had blocked his number. At this interview, Appellant stated that Hatcher had been suicidal at the time she broke up with Appellant. Detective Martin interviewed Appellant again on November 13, where Appellant's story remained consistent other than, at this interview, Appellant described Hatcher as having "murderous tendencies."

On April 2, 2020, APD officers were dispatched to respond to an assault at a convenience store. When they arrived, Appellant claimed to have been assaulted. After he was examined by EMS, Appellant told the officers that he had "personally asphyxiated" Hatcher and disposed of her body. One of the officers to whom he made this confession noted that Appellant has had mental health issues so his confession "could be a hoax." Based on his confession, APD officers transported Appellant for another interview with Detective Martin. During this interview, Appellant stated that, on August 12, he and Hatcher got into an argument after which he went to a convenience store. When he returned to the apartment, he found Hatcher's body lying on the bed. Appellant said that he put her body in some sort of luggage, which he disposed of in the apartment dumpster.

The following day, Appellant called Detective Martin to request another interview. Before the time for the interview arrived, Appellant flagged down an officer on Interstate 35 in downtown Austin, almost running into the highway to do so. He requested that the officer detain him because he had committed a homicide. Detective Martin subsequently interviewed Appellant. During this interview, Appellant stated that, while on PCP, he had grabbed Hatcher by the throat, choked her, and then suffocated her with a pillow to ensure that she was dead. At the conclusion of this interview, Appellant was arrested.

4

Appellant was indicted for the offenses of murder and tampering with evidence. He proceeded to trial. At the close of the State's case-in-chief, Appellant moved for a directed verdict on the basis that the State failed to satisfy the corpus delicti rule, which requires evidence outside of Appellant's confessions to establish that Hatcher was murdered by someone. The trial court denied Appellant's motion. Further, at the close of the guilt-innocence portion of the trial, the trial court instructed the jury that it would have to find that evidence independent of Appellant's out-of-court confessions established that Hatcher had been murdered. The jury returned a verdict finding Appellant guilty of the murder of Hatcher and tampering with evidence by disposing of her body. Subsequently, Appellant filed a motion for new trial, which was expressly denied by the trial court. Appellant then timely filed his notice of appeal.

By his appeal, Appellant presents two issues. Appellant contends that there was insufficient evidence to meet the corpus delicti rule as to the murder of Hatcher (Issue One) or that Appellant tampered with evidence (Issue Two).

### STANDARD OF REVIEW

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Queeman v. State*, 520 S.W.3d 616, 622

5

(Tex. Crim. App. 2017). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J., concurring). When reviewing all the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 & n.26. In our review, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See id.* at 899. As such, even if we would have resolved the conflicting evidence in a different way, we must defer to the jury's findings that are supported by sufficient evidence. *Id.* at 901–02 (discussing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)).

"It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt." *Nisbett*, 552 S.W.3d at 262. Not all facts need to point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.*

### THE CORPUS DELICTI RULE

The corpus delicti rule is a rule of evidentiary sufficiency "affecting cases in which there is an extrajudicial confession." *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015). The rule provides that, "[w]hen a conviction is based on a defendant's extrajudicial confession, that confession does not constitute legally sufficient evidence of

6

guilt without corroborating evidence independent of that confession showing that the essential nature of the offense was committed." *Miranda v. State*, 620 S.W.3d 923, 928 (Tex. Crim. App. 2021). Essentially, the corpus delicti rule requires an additional requirement of proof beyond our traditional *Jackson* sufficiency analysis for cases involving extrajudicial confessions. *See Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021) ("In cases involving extrajudicial confessions when 'beyond a reasonable doubt' is the burden, not only must the evidence be legally sufficient under *Jackson* but also it must tend to show the corpus delicti of the offense.").

To meet the corpus delicti rule, corroborating evidence need not independently prove the crime; rather, it must simply make the occurrence of the crime more probable than it would be without the evidence. *Id.* The corpus delicti rule has been traditionally applied to ensure that a person is not convicted "solely on his own false confession to a crime that never occurred." *Carrizales v. State*, 414 S.W.3d 737, 740 (Tex. Crim. App. 2013). The corpus delicti rule originated in England more than 300 years ago and Texas has applied the rule for more than one hundred and sixty years. *Shumway v. State*, 663 S.W.3d 69, 75 (Tex. Crim. App. 2022).

The corpus delicti of a particular crime is "the fact that the crime in question has been committed by someone." *Fisher v. State*, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993). The rule is satisfied with proof that the crime itself occurred; the State is not required to prove that the specific defendant committed the criminal act. *Id.* The corpus delicti of murder is established "if the evidence shows the death of a human being caused by the criminal act of another, and the State is not required to produce and identify the body or remains of the decedent." *Nisbett*, 552 S.W.3d at 263 (citing *McDuff v. State*,

7

939 S.W.2d 607, 614 (Tex. Crim. App. 1997)). The ultimate question is whether the evidence, when viewed as a whole, is sufficient to establish the victim's death. *Id.* at 264.

A confession alone cannot be used to satisfy the corpus delicti. *Shumway*, 663 S.W.3d at 76. "We have long held that 'in the establishment of the corpus delicti, the confessions are not to be excluded, but are to be taken in connection with the other facts and circumstances in evidence.'" *Id.* (quoting *Kugadt v. State*, 44 S.W. 989, 996 (Tex. Crim. App. 1898)). In other words, rather than being completely ignored, the confession can be used to help analyze other available evidence. *Id.* The Court of Criminal Appeals has explained,

> Although a court can use the confession in its analysis, there must be some evidence outside of the confession that, standing alone or in conjunction with the confession, provides proof "that the crime charged has been committed by someone." Essentially, the *Kugadt* Rule simply allows a confession to "render sufficient circumstantial evidence that would be insufficient without it," but it still requires "other facts and circumstances" outside of the confession.

*Id.* (quoting *Watson v. State*, 227 S.W.2d 559, 562 (Tex. Crim. App. 1950)).

### ANALYSIS

By his first issue, Appellant challenges the sufficiency of the evidence establishing the corpus delicti of murder. After reviewing all of the evidence, we believe that the evidence was sufficient to allow a rational jury to conclude that Hatcher had been murdered by someone and, therefore, that the corpus delicti rule was satisfied. The evidence establishes that Appellant was the last person seen with Hatcher. According to a statement he gave to police, he and Hatcher got into an argument on the night of her

8

disappearance. Appellant was seen alone using Hatcher's Lone Star card within days of her disappearance. However, in his statement to police, Appellant claimed that he only used Hatcher's Lone Star card in her presence. Appellant also pawned Hatcher's cell phone but told police that he did not know the owner of the phone. Before being contacted about Hatcher's disappearance, Appellant performed Google searches for missing persons reports in the area. Hatcher's daughter, Domonique, testified that Hatcher's apartment was in disarray compared to the way that Hatcher kept it. The disarray of the apartment could allow a rational inference that an altercation had occurred there. Domonique also testified that it was unusual to find Hatcher's wig on the floor because Hatcher cared for her appearance. Domonique implied that Hatcher would not voluntarily leave the apartment without wearing the wig. The presence of the wig on the floor could also allow for a reasonable inference that an altercation had occurred in the apartment. There was also evidence that Appellant had broken down Hatcher's front door prior to her disappearance. The evidence establishes that Hatcher did not use any income from a known source after her disappearance on August 12, 2019. She also had no contact with family or friends after that date or posted anything to social media, even though Hatcher had always stayed in contact with her family and was an avid social media user. Likewise, Hatcher did not report to work after August 12, and allowed a default judgment to be taken against her in an eviction proceeding after she failed to appear for the hearing. APD did an exhaustive search for Hatcher but was unable to locate her or her body. Appellant concedes that the "circumstantial evidence does indicate [that Hatcher] is likely dead." Finally, when we consider Appellant's confession, in which he claims to have "asphyxiated" Hatcher, we note that such a manner of murder is consistent with the state

9

of the apartment. Considering all of the evidence admitted in this case, we conclude that a reasonable jury could have reached the conclusion that Hatcher was the victim of murder.[3] Consequently, we conclude that the evidence is sufficient to establish the corpus delicti of murder and, thus, overrule Appellant's first issue.

By his second issue, Appellant challenges the sufficiency of the evidence to establish the corpus delicti of tampering with physical evidence. The corpus delicti rule does not strictly apply where the confession involves multiple, closely related criminal episodes within a single criminal episode or course of conduct. *Miller*, 457 S.W.3d at 927. This exception to the corpus delicti rule "applies only when the temporal relationship between the offenses is sufficiently proximate that introduction of the extrajudicial confession does not violate the policies underlying the corpus delicti rule." *Id*. Having already determined that the evidence establishes the corpus delicti of Hatcher's murder, we need only determine whether the claim that Appellant tampered with evidence was closely related to Hatcher's murder and part of the same criminal episode or course of conduct. Appellant has consistently told the police that immediately after discovering Hatcher's body, he put her body in some luggage and disposed of the luggage in the apartment's dumpsters. Appellant's explanation of what he did with Hatcher's body is consistent throughout his confessions. Clearly, Appellant's confessed action in disposing

---

[3] Appellant raises the possibility that Hatcher may have died from a drug overdose. While the evidence would allow for that inference, we are mindful that Appellant's issue challenges the sufficiency of the evidence to support the jury's decision that the evidence established the corpus delicti of murder. Our conclusion that there is sufficient evidence from which a reasonable jury could decide that Hatcher was murdered is all that is necessary for us to overrule Appellant's first issue.

of Hatcher's body is closely related to her murder and part of the same criminal episode. As such, we overrule Appellant's second issue.

## CONCLUSION

Having overruled both of Appellant's issues, we affirm the judgment of the trial court.

Judy C. Parker
Justice

Do not publish.

11