NO. 12-03-00073-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


SAMUEL CALDWELL,                                    §     APPEAL FROM THE 114TH
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     SMITH COUNTY, TEXAS





MEMORANDUM OPINION
            Samuel Caldwell (“Appellant”) was convicted of driving while intoxicated and was
sentenced to ten years of imprisonment, probated for seven years, and a $5,000.00 fine. On appeal,
Appellant contends that the evidence is legally and factually insufficient to support his conviction
for driving while intoxicated. We affirm.
 
Background 
            On December 5, 2002, Appellant was indicted for the felony offense of driving while
intoxicated.


 On February 7, 2003, a bench trial was held. After the presentation of evidence and
arguments, the court found Appellant guilty and assessed a sentence of ten years of confinement,
probated for seven years, and a $5,000.00 fine. This appeal followed. 
 
Sufficiency of the Evidence 
            In issues one and two, Appellant contends that the evidence is legally and factually
insufficient to support the court’s finding that he is guilty of the offense of driving while intoxicated. 
Specifically, Appellant maintains that the evidence of the corpus delicti of the offense of driving
while intoxicated, the operation of a motor vehicle, is insufficient because the only evidence that
places Appellant behind the wheel of the vehicle at issue came from Appellant’s post-arrest
admission to the arresting officers.
Standards of Review            
            The standard of review for legal sufficiency of the evidence is whether, viewing the evidence
in the light most favorable to the jury’s verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Whitaker v. State, 977 S.W.2d 595, 598 (Tex.
Crim. App. 1998). An appellate court should uphold the jury’s verdict “unless it is found to be
irrational or unsupported by more than a mere modicum of evidence.” Moreno v. State, 755 S.W.2d
866, 867 (Tex. Crim. App. 1988). All conflicts in the evidence should be resolved in favor of the
verdict, and every reasonable inference indulged. Sneed v. State, 803 S.W.2d 833, 837 (Tex.
App.–Dallas 1991, pet. ref’d). The jury is the exclusive judge of the credibility of the witnesses and
of the weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App.
1994). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the
jury. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).
            When reviewing the factual sufficiency of the evidence, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is
so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compare it with the evidence that tends to
disprove that fact. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We review the fact
finder’s weighing of the evidence and are authorized to disagree with the fact finder’s determination. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). This review must employ appropriate
deference to prevent an appellate court from substituting its judgment for that of the fact finder, and
any evaluation should not substantially intrude upon the fact finder’s role as the sole judge of the
weight and credibility to be given to the testimony of the witnesses. Jones, 944 S.W.2d at 648. 
The Evidence
            At around 11:15 on the night of August 25, 2002, Patricia Sheain (“Sheain”), a jailer at the
Smith County Jail, was on her way home from work and pulled into a Fina gas station on Highway
64 in Chapel Hill. As Sheain was pumping gas into her vehicle, she saw a Chevy pickup drive into
the parking lot of the gas station and noticed Appellant lying in the back of the truck. Sheain saw
Appellant “pop his head up” and thought he looked suspicious. After Sheain finished pumping the
gas, Appellant exited the back of the truck and went to the other side of the gas station. She saw
blood spots on Appellant’s shirt, blood on his forehead, cuts on his face, and a gash on his head.
            Sheain then saw an EMS worker, who happened to be at the gas station at the same time, go
over to Appellant and ask him if he needed help. Sheain noticed that Appellant was “real nervous”
and saw Appellant decline help from the EMS worker. She then walked over to the EMS worker
and asked if there was a problem. Appellant and the EMS worker both said that there was not a
problem, so Sheain got in her vehicle and left the gas station to go home to Henderson. 
            After Sheain had traveled east on Highway 64 for about a mile, she saw a black vehicle
turned upside down on the left side of the road in a ditch. All of the windows of the vehicle were
broken out. At that time, Smith County Deputy Russell Richardson (“Richardson”) was already at
the vehicle, so Sheain pulled over to see if Richardson needed any help. After Richardson told her
that no one was at the scene, Sheain told him that there was a person at the gas station that “has
blood and stuff on him.” Sheain and Richardson then got into Sheain’s vehicle and drove to the gas
station. When they arrived, Richardson asked Appellant to step out of the EMS worker’s vehicle,
and Sheain talked to the EMS worker. Sheain then went over to Appellant and asked him why he
had left the scene of the accident. Appellant told Sheain that he left because he had just found out
that his girlfriend was pregnant and he did not want to go to jail. Appellant then told Sheain that the
vehicle in question was not his but belonged to a relative and that he was driving the vehicle to
Henderson because he had a family emergency. Sheain smelled alcohol on Appellant’s breath and
saw that Appellant was crying and shaking and seemed very “stressed out.” After talking to
Appellant, Richardson and Sheain detained Appellant and waited for someone from the Texas
Department of Public Safety to arrive. Other than Appellant’s statement to her, Sheain could not
find anything else that placed Appellant at the scene of the overturned vehicle.
            Richardson stated that he had gotten off work at around 11:00 on the night of August 25 and
was driving home to his residence in Chapel Hill when he observed a black SUV turned upside down
in a ditch on the left side of the road. He also observed another vehicle on the side of the road, so
he turned around to see if he could offer any assistance because no other law enforcement vehicles
were at the scene. When he approached the vehicle, he could tell that the ignition was still on
because he heard the radio, but the engine was not running. A female EMS worker was driving the
other vehicle and told Richardson that no one was in the vehicle. Richardson then called the
dispatcher from his cell phone in order to get some assistance at the scene and waited for someone
from the DPS to arrive. 
            Richardson testified that he could see markings in the ditch where the vehicle had left the
roadway, gone through a culvert, and traveled up onto a pipe fence that ran parallel to the highway. 
He believed that the vehicle had struck the fence because he saw fresh scratches on the top and
middle of the fence, and the top of the fence had a U-shaped bend in it where it had been crushed
down. Richardson stated that he also believed the damage was fresh because the bend in the top of
the fence was not present when he went to work earlier that day. 
            When he investigated the vehicle, Richardson could not find anything to identify the driver
of the vehicle or its owner. After a DPS trooper arrived, Richardson got into Sheain’s vehicle and
traveled back to the gas station. When they reached the gas station, he saw Appellant sitting in the
vehicle of the EMS worker he spoke to at the scene of the accident. When Richardson then asked
the woman if everything was okay, the woman replied, “Yes,” but she was winking as she spoke. 
Her actions seemed odd to Richardson, so he got out of the vehicle and walked around to the
passenger side of the EMS worker’s vehicle. Richardson then asked Appellant to get out of the car
and talk to him. Appellant got out of the EMS worker’s vehicle, and Richardson asked him if the
overturned vehicle belonged to him. Appellant said that it was his vehicle and that he had been
driving the vehicle when it ran off the road. When Richardson asked Appellant if he had been
drinking, Appellant said that he had, but that the drinking was not the reason he ran off the road. 
Appellant stated that as he was going to Henderson from a friend’s house in Tyler, he fell asleep and
ran off the road. Other than Appellant’s statements to him, Richardson did not find any independent
evidence to place Appellant at the scene of the accident.
            Kristopher Baker (“Baker”), a Texas Department of Public Safety trooper, was notified of
an accident at 11:40 p.m. on August 25 and was dispatched to the scene on Highway 64. When he
arrived at the scene of the accident, he found a black SUV turned upside down in the westbound bar
ditch, but the driver of the vehicle was nowhere to be found. Baker believed that the accident had
recently occurred because the engine was still warm to the touch when he touched the side of the
vehicle, but acknowledged that there was no specific way to determine how long the vehicle had
been overturned. As he canvassed the accident scene, he found tire tracks in the grass and saw that
the vehicle struck a pipe fence, came down, and traveled a short distance. He could also see fresh
dirt where the vehicle had overturned. Upon further inspection of the scene, he found a small
amount of vomit right outside the driver side door, which led him to believe that someone had gotten
sick after the accident occurred. When he looked into the vehicle, Baker could not find anything that
belonged to Appellant. Baker also stated that when he investigated the ownership of the black SUV,
he found that it belonged to an Ella Mae Medford, one of Appellant’s relatives. 
            Shortly thereafter, he was notified that a Smith County deputy had located an individual at
the Fina gas station about a mile from the accident scene. Baker then drove to the gas station and
found Appellant talking to two Smith County deputies. When Baker walked up to Appellant,
Appellant was sitting down and holding his head in his hands. Appellant appeared to Baker to be
very upset and nervous and was bleeding from an open wound. He could not, however, determine
how Appellant sustained the wound or how recently. Baker then asked Appellant if he had just been
involved in an accident, and Appellant admitted to him that he had. When Baker asked Appellant
why he left the scene, Appellant told him that he left because he needed to get some help.             As Baker was talking to Appellant, he noticed a very strong odor of alcohol emanating from
Appellant’s breath. Appellant’s eyes were bloodshot and red, and he appeared to Baker as if he had
been drinking earlier in the evening. Baker asked Appellant if he had been drinking, and Appellant
said he had consumed about four beers “earlier.” Baker, who is certified to conduct standard field
sobriety tests, then had Appellant perform three sobriety tests: 1) horizontal gaze nystagmus (HGN),
2) walk-and-turn, and 3) one-leg stand. When Baker administered the HGN test, he found
nystagmus at maximum deviation in Appellant’s eyes. Although Appellant successfully completed
the walk-and-turn test, Baker noticed that Appellant stepped offline, used his arms for balance, and
made an improper turn after his first nine steps. These clues indicated to Baker that Appellant was
not able to focus on what he was doing because of his level of intoxication and that Appellant had
lost the use of his normal and physical faculties. During the one-leg stand test, Baker saw that
Appellant swayed while balancing. Baker’s observations of Appellant, taken as a whole, led him
to conclude that Appellant was intoxicated. Baker then placed Appellant under arrest for driving
while intoxicated.
            Gale McMullen (“McMullen”), also a Texas Department of Public Safety trooper, testified
that on August 26, 2002, he ran two breath sample tests on Appellant with an Intoxilizer 5000
instrument to determine the blood alcohol content present in Appellant’s body. Rex Swords
(“Swords”), a technical supervisor with the Texas Department of Public Safety, stated that the
Intoxilizer 5000 machine was in working order when he tested the machine on August 21 and
September 9. Swords testified that the results of the breath sample submitted by Appellant showed
that he had a .142 percent blood alcohol content in the first test and a .140 blood alcohol content in
the second test. When asked if he could hypothesize as to the blood alcohol content of a person who
had been driving at 11:00 on the night of the accident, Swords testified that he could not.
Applicable Law
            A person commits the offense of driving while intoxicated if the person is intoxicated while
operating a motor vehicle in a public place. Tex. Pen. Code Ann. § 49.04(a) (Vernon 2003). 
“Intoxicated” is defined as 
 
(A)not having the normal use of mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of
those substances, or any other substance into the body; or
 
(B)having an alcohol concentration of 0.08 or more.
 
Tex. Pen. Code Ann. § 49.01(2) (Vernon 2003). 
            The corpus delicti of a crime relates to the element of criminality; that is, a certain prohibited
act has been committed or result accomplished and that it was committed or accomplished by
criminal human agency. Black’s Law Dictionary 346 (7th Ed. 1999). The common law corpus
delicti rule holds that no criminal conviction can be based upon a defendant’s extrajudicial
confession unless the confession is corroborated by independent evidence tending to establish the
corpus delicti. See Fiedler v. State, 991 S.W.2d 70, 73 (Tex. App.– San Antonio 1998, no pet.). 
The corpus delicti need not be proven independently of an extrajudicial confession; there need only
be evidence corroborating the confession. Fisher v. State, 851 S.W.2d 298, 302 (Tex. Crim. App.
1993). 
Analysis
            Although none of the witnesses saw Appellant operate the black SUV at issue, the evidence,
as a whole, supports Appellant’s confession that he was operating the vehicle when it overturned. 
Appellant was found a mile from the scene of the accident with blood all over him from various cuts
on his head and body. No other persons were found near the scene of the accident, and no other
explanations were given as to how Appellant sustained the injuries. Furthermore, the engine
compartment of the vehicle was still warm, the radio was on, and the dirt pushed up by the vehicle’s
wheels was fresh. The inference can easily be made that Appellant was driving the vehicle at issue
in this case when it overturned, thereby causing his injuries. Accordingly, we hold that the evidence
is legally sufficient to support the trial court’s finding that Appellant was operating the black SUV. 
Appellant’s first issue is overruled. 
            With regard to the factual sufficiency of the evidence to support the finding that Appellant
was operating a motor vehicle, we note again that none of the witnesses actually saw Appellant
driving the vehicle. However, when taken as a whole, the evidence to support the inference and
Appellant’s admission that he was operating the vehicle is not outweighed by the lack of eyewitness
testimony placing Appellant behind the wheel before the vehicle overturned. Therefore, the evidence
is factually sufficient to support the trial court’s finding that Appellant was operating the vehicle. 
Appellant’s second issue is overruled.

 
Conclusion 
            The evidence adduced at trial is legally and factually sufficient to support the court’s finding
that Appellant operated the motor vehicle on the night of August 25, 2002. Accordingly, the
judgment of the trial court is affirmed.
 
 
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice
 
 
Opinion delivered July 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(DO NOT PUBLISH)