**Rufino Salinas MESTIZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–93–704–CR.**

Court of Appeals of Texas,
Corpus Christi.

April 11, 1996.

Larry Warner, Brownsville, for appellant.

Luis V. Saenz, District and County Attorney, Robert H. Moore, Jr., Assistant District Attorney, Brownsville, for appellee.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Chief Justice.

A jury found appellant guilty of murder and assessed his punishment at forty years in prison. Appellant raises sixteen points of error. We affirm.

By point one, appellant contends that the prosecutor fundamentally erred during jury argument when she asked the jury to consider parole in assessing punishment. Appellant did not object when the argument was made. Failure to object to improper jury argument generally waives any error. *Willis v. State*, 785 S.W.2d 378, 385 (Tex. Crim.App.1989). However, when an argument is so egregious that an instruction to disregard could not cure the error, no objection is necessary. *Id.* The prosecutor argued as follows:

> If you look [at the charge], it talks about the parole, when a person is eligible for that. And it tells you the formula basically that they use, which is one-fourth of the time before somebody is eligible for parole. So if somebody like Mr. Valle [the defense counsel] wants five years as he is requesting, if you do one-fourth of that, that means that person would only serve before he is eligible for parole one year and three months, that's all that person would serve.
>
> THE COURT: Counsel, there is a two year minimum for under six.
>
> MS. LOPEZ [the prosecutor]: That's all, and you can look at the rules here that tell you about parole, and you can calculate it back there, that's the reason why. Before we did not have this, we were not allowed to tell the jury anything of this, the State could not tell you this. And then within the last couple of years, the rules have changed, and now in the charge you have it there.

In *Mendoza v. State*, 840 S.W.2d 697, 701–02 (Tex.App.—Corpus Christi 1992, no pet.), we found improper jury argument which could not be cured by instruction when the prosecutor repeatedly told the jury that the defendant would not serve his entire sentence and urged the jury to assess a high punishment because of parole. In the present case, the prosecutor erred by implying that appellant would be released when eligible for parole and that he could be released in less than two years. But, we find that these statements were not so harmful that

they could not have been cured. Had appellant objected, the trial court could have promptly repeated the instructions contained in the charge that a defendant's release date cannot be predicted. Furthermore, the trial court corrected the prosecutor's incorrect reference to "one year and three months," and the prosecutor did not repeat her improper argument, as in *Mendoza*. Point one is overruled.

■ By point two, appellant contends that the trial court commented on the weight of the evidence when, during voir dire, he implied that the jury would return a guilty verdict. The record shows that a panel member asked about parole. The trial judge responded that parole instructions would be given "if we get to that stage—in other words, let's say we get a guilty verdict." When a second parole question was asked immediately thereafter, the trial judge briefly explained parole and said that he would give parole instructions later. Appellant claims that the judge's second response implied that he expected a guilty verdict. Appellant did not object to the trial judge's comment.

■ A timely proper objection is necessary to preserve error concerning a trial judge's comment on the weight of the evidence. *Minor v. State*, 469 S.W.2d 579, 580 (Tex.Crim.App.1971); *Lee v. State*, 454 S.W.2d 207, 208–09 (Tex.Crim.App.1970); *Lookingbill v. State*, 855 S.W.2d 66, 77 (Tex. App.—Corpus Christi 1993, pet. ref'd). By not objecting, appellant waived any error. But, even if the matter had been preserved, we would find no error. The judge's first answer was prefaced by his remark that if a guilty verdict were returned, parole instructions would be given. The follow-up question and answer were based on the assumption that a parole charge was necessary. Only a strained interpretation of the judge's remarks would lead to a conclusion that the trial court was commenting on the weight of the evidence. Point two is overruled.

By point three, appellant contends that the trial court erred by not making findings of fact and conclusions of law regarding the voluntariness of appellant's confession. After appellant's brief was filed, this Court abated the appeal, and the trial court made findings. Accordingly, point three is moot.

■ By points four and five, appellant challenges the admissibility of his confession. He argues that no evidence was admitted to show that he was warned of his constitutional rights. He also argues that the face of the confession fails to reflect the warnings required by the Code of Criminal Procedure. *See* Tex.Code Crim.Proc.Ann. art. 38.22 § 2 (Vernon 1979). Appellant admits that the record contains a Spanish document bearing his signature which shows he was warned of his rights. Appellant asserts, however, that there is no English translation of this document and, therefore, no evidence that he was warned as required. The record fails to substantiate appellant's claims. Appellant's signed statement contains, in English, all of the required warnings. Furthermore, the officer who obtained appellant's statement testified that the warnings were translated for appellant before the statement was obtained. Appellant's initials appear by each warning on the face of the English language confession. Thus, the record plainly contains the matter which appellant asserts is missing. Points four and five are overruled.

■ By point six, appellant complains that his written statement was in reality an inadmissible oral confession. The record shows that appellant orally confessed in Spanish. As appellant spoke, Officer Santiago Garcia hand-wrote the confession in English. Garcia then typed the statement in English, read it back to appellant in Spanish, and made corrections. Appellant then signed the English language statement. Appellant claims that such a confession is nothing more than an English memorandum of an oral Spanish confession. Accordingly, he argues, the statement is inadmissible.

Appellant did not object on this ground at trial. Appellant's failure to raise this argument in the trial court waives error, if any. Tex.R.Crim.Evid. 103(a)(1); Tex.R.App.P. 52(a). Even if the point was preserved for review, there appears to be no error in the procedure that Garcia used to obtain the written English confession. *See Montoya v.*

*State*, 810 S.W.2d 160, 173–74 (Tex.Crim.App. 1989). Point six is overruled.

■ By point seven, appellant complains that the "evidence fails to corroborate the cause of death." Appellant argues that the State did not prove that the body which was autopsied was that of Maria Quirino, the alleged victim. He also alleges that there was conflicting testimony regarding the body and, thus, the evidence is insufficient to establish the cause of death. Appellant excerpts portions of the trial testimony, asserts that there was conflicting testimony about the body, and implies that witnesses who identified the body could have been referring to a body other than the one autopsied. We disagree.

With regard to appellant's first complaint, Dr. DeWitt testified that he performed an autopsy on an unidentified female, which was found in a field.[1] He testified that the body was identified by Quirino's sister and a co-worker as Maria Quirino, the alleged victim, after he performed his autopsy. At trial, Quirino's sister testified that her identification was based on the physical characteristics of the body and a "J" tattoo on Quirino's right arm. Maria De La Luz Lopez viewed the body and agreed it was Quirino. Although De La Luz Lopez was not one-hundred percent certain of her identification because of the decomposition, she recognized Quirino's legs, the "J" tattoo, and nail polish.

Although the body was unidentified at the time of autopsy, it is clear that the autopsied body was identified as Quirino after the autopsy. Accordingly, appellant's first complaint is without merit.

■ Appellant next contends that the identification of the body was insufficient because there was conflicting evidence concerning the body's condition. Appellant points out that a deputy sheriff said the body's fingers were rotted away, while the patholo-gist testified that the body had fingers. We have reviewed the entire testimony and find no material conflicts. While the pathologist testified that the body had fingers, he further explained that the fingers were black, green, and mushy, and that the skin and soft tissue were rotted. When the pathologist's entire testimony is considered, it is not materially different from the deputy sheriff's. We find the evidence sufficient to show that the pathologist and other witnesses were referring to the same body.

Appellant also complains under this same point of error that the trial court erred in admitting evidence of the autopsy. We find no objection to the admission of any autopsy evidence, nor does appellant cite us to any trial objection. Thus, his complaint is not preserved for review. Tex.R.App.P. 52(a); Tex.R.Crim.Evid. 103(a)(2). Point seven is overruled.

■ By point eight, appellant complains that the trial court erred by allowing a witness who had violated the "rule" to testify. When the victim's sister Mayte Quirino was called to testify, appellant asked that her testimony not be considered because Quirino had been sitting in the courtroom all afternoon. After an off-the-record bench discussion, the trial judge stated that he would find "no harm and no foul" as Quirino was only there to identify the body.

■ Generally, when a witness violates the "rule," harmful error occurs when the witness's testimony contradicts the testimony of a witness he actually heard from the opposing side or corroborates the testimony of another witness he actually heard from the same side. *Cooks v. State*, 844 S.W.2d 697, 733 (Tex.Crim.App.1992); *see Emiliano v. State*, 840 S.W.2d 102, 106–07 (Tex.App.— Corpus Christi 1992, pet. ref'd). On the afternoon that the State called Quirino to testi-

---

1. The indictment alleged that appellant caused Quirino's death by suffocating her with a pillow. Appellant confessed that he placed a pillow over her face and pushed down until she no longer moved. Quirino's body was found wrapped in a blanket in a field. Her panties were pulled down and torn. The body was so decomposed that DeWitt could not find any specific injuries or determine a medical cause of death. From his review of the body's organs, DeWitt ruled out certain causes of death, such as disease, severe trauma or shooting, but he could not rule out causes of death such as strangulation or suffocation. Because he could find no natural cause of death and because the body was found in an isolated area wrapped in a blanket with pulled-down, torn panties, DeWitt believed foul play was involved.

fy, two witnesses testified before her. Both witnesses were State's witnesses. The first witness and Quirino testified about nothing in common. The second witness, Cecilia Trejo, identified the autopsied body as that of the alleged victim. Appellant asserts that Quirino's testimony corroborated Trejo's. We disagree. Trejo was shown State's exhibit 11 and asked if she recognized the person. Trejo identified the exhibit as a photograph of Maria Quirino. Trejo then testified extensively about other matters. When Mayte Quirino was called to testify, the State did not ask her to identify exhibit 11. Rather, the State asked her if she had previously identified the body of her sister and on what basis. Quirino then testified that she had identified the body of her sister based on a tattoo, her hands, her legs, and the shape of her body. The State did not show Quirino any exhibit or ask her to identify the body at trial. As such, Quirino's identification testimony was independent of Trejo's. Point eight is overruled.

■■■■■ By point nine, appellant contends that the evidence fails to corroborate appellant's confession that the victim was suffocated with a pillow. This State follows the common law rule that a criminal conviction cannot be based on a defendant's extrajudicial confession unless the confession is corroborated by independent evidence tending to establish the corpus delicti of the offense. *See Fisher v. State*, 851 S.W.2d 298, 302 (Tex.Crim.App.1993). The corpus delicti of murder is established if the evidence shows (a) the death of a human being (b) caused by the criminal act of another. *Id.* at 303. Under the corpus delicti rule, our task as an appellate court is to consider all the record evidence, other than appellant's confession, in the light most favorable to the jury's verdict to determine whether that evidence tended to establish the corpus delicti.[2] *Id.* The rule does not require that the independent evidence fully prove the corpus delicti, only that it tend to prove the corpus delicti. *Id.* at 302–03.

■■■ The record shows that Quirino was found in a field, wrapped in a blanket, with her panties pulled down and torn. No natural cause of death could be determined. Certain traumatic causes of death were ruled out, but suffocation was not. In addition to this physical evidence which tends to prove foul play, Cecilia Trejo testified that she heard appellant threaten to kill Quirino, and she identified the blanket which wrapped Quirino's body as a blanket which she had seen appellant take from a washing machine shortly before Quirino disappeared. This evidence tends to prove that Quirino's death was caused by the criminal act of another. The independent evidence sufficiently corroborates appellant's confession. Point nine is overruled.

■■■ By point ten, appellant contends that the trial court commented on the weight of the evidence at the close of the guilt phase when he told the jury the amount of time he anticipated the parties would need for closing jury argument and the punishment phase. The trial judge stated:

> So I think that—my ball park estimate, assuming a guilty verdict—and I'm only saying this assuming a guilty verdict for purposes of giving you a time frame, because an innocent verdict or not guilty verdict will stop things right there and you don't need to know how much longer. But assuming a guilty verdict, I would estimate probably somewhere in the neighborhood of a total, including the first part and anything afterwards, probably three hours in total, and anything else that might happen would be deliberating.

■■■ Appellant did not object to the trial judge's comments. A defendant, to complain about a trial judge's comment on the evidence, must timely object. *Minor*, 469 S.W.2d at 580. Appellant did not preserve error, if any. Point ten is overruled.

■■■ By point eleven, appellant complains that the trial court erred by permitting witness Maribel Flores to testify after she heard appellant testify. We disagree. Flores was

---

**2.** The primary purpose of the corpus delicti rule is to assure that no person is convicted without some independent evidence showing that the very crime to which he confessed was actually committed by someone. *Gribble v. State*, 808 S.W.2d 65, 71 (Tex.Crim.App.1990).

apparently not placed under the "rule" and was not called as a State's witness during its case-in-chief. After appellant testified in his own defense, the State called Flores in rebuttal. Appellant objected to Flores being allowed to testify on the basis that she had been in the courtroom. The prosecutor told the trial court that Flores had been present in the courtroom only during the beginning of appellant's testimony but was asked to leave when appellant "started lying."

■ The "rule" does not prevent someone who heard a portion of the trial testimony from testifying at the rebuttal phase, assuming that the prosecution acted in good faith. *See Valdez v. State*, 776 S.W.2d 162, 169–70 (Tex.Crim.App.1989). While it is apparent that the prosecution knew Flores might provide relevant testimony regarding appellant's whereabouts on the day of the murder, the State obviously did not believe it was important to call Flores during its case-in-chief. When it became apparent to the prosecutor during appellant's testimony that Flores could provide contradicting testimony, the prosecutor instructed Flores to leave the courtroom.

In assessing whether the State acted in good faith, we look at appellant's confession, appellant's testimony, and Flores' testimony. Our review shows that appellant's testimony and Flores' differ in only a few respects. Appellant testified that he and a Veronica were not boyfriend and girlfriend, while Flores testified that they were.[3] Their testimony was also inconsistent regarding the time of appellant's presence at the Party Time bar.[4]

Obviously, the prosecutor knew that Flores could provide some evidence concerning appellant's motive and alibi. But, we note that in appellant's confession, appellant refers to Veronica as "a girlfriend" and admits going to the Party Time bar. Thus, it appears to us that until appellant took the stand and testified contrary to his statement, the State would have had no reason to call Flores.

We conclude that as Flores had not been placed under the "rule" and was not a witness in the case-in-chief, and as the State appears to have acted in good faith in not placing Flores under the "rule," the trial court did not err by allowing Flores to testify, even though she heard some of appellant's testimony.

Appellant also complains under this same point that the prosecutor erred by stating, in the jury's presence, that she asked Flores to leave when appellant started lying. Appellant did not object at trial to this statement and, therefore, has waived error. Tex. R.App.P. 52(a). Point eleven is overruled.

By points twelve and thirteen, appellant contends that he was denied a fair trial when the State referred to his religious beliefs as witchcraft. At one point, the prosecutor asked Angelica Rodriguez, "Miss Rodriguez, your husband practices witchcraft, doesn't he?" At another point, a State's witness, deputy Luis Martinez, testified, "We also found a worship altar at the residence where they practiced, like spiritual readings or witch doctor practice." No objection was raised to either the prosecutor's question or the witness's answer. Thus, no error was preserved. Tex.R.App.P. 52(a). Points twelve and thirteen are overruled.

■ By point fourteen, appellant complains that the trial court erred by overruling his objection to a "misleading voir dire hypothetical." The prosecutor stated that a pillow can be a deadly weapon if it is used to suffocate or kill. Appellant contends that the statement is inaccurate because a pillow only becomes a deadly weapon when the actor places a pillow over someone's face with the intent to kill or cause serious bodily injury.

While appellant may be correct, we find nothing preserved for review because appellant's trial objection does not comport with his appellate complaint. Appellant's trial objection was that the prosecutor was "voir diring as to the facts." Since the trial objection and appellate complaint do not comport, nothing is preserved for review. Tex. R.App.P. 52(a). Point fourteen is overruled.

---

3. This evidence was arguably relevant in assessing appellant's motive to kill.

4. This testimony was relevant to alibi.

By point fifteen, appellant contends that the court erred by failing to submit a deadly weapon issue to the jury at the punishment phase of trial. We disagree. The jury found appellant guilty as charged in the indictment. The indictment alleged that the pillow "in its manner of use and intended use was capable of causing serious bodily injury." The jury, through its guilty verdict, found that the pillow was used in this manner. Thus, no deadly weapon issue was required at the punishment phase. *Polk v. State,* 693 S.W.2d 391, 394 (Tex.Crim.App.1985). Point fifteen is overruled.

By point sixteen, appellant contends that appellant's warrantless arrest was illegal. At trial, appellant contested the voluntariness of the confession, but he never raised an issue regarding the legality of his arrest. As appellant's appellate complaint differs from his trial complaint, the point is not preserved for review. Point sixteen is overruled.

The judgment of the trial court is affirmed.