NUMBER 13-01-183-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

XAVIER ROLANDO RESENDEZ,                                               Appellant,

v.
 
THE STATE OF TEXAS,                                                     Appellee.
                                                                                                                                      

On appeal from the 103rd District Court of Cameron County, Texas.
                                                                                                                      

O P I N I O N

Before the Court En Banc
Opinion by Justice Garza
 
On the Court’s motion, Resendez v. State, No. 13-01-183-CV, 2004 Tex. App.
LEXIS 7262 (Corpus Christi, August 12, 2004, no pet. h.) is withdrawn and this en banc
opinion is issued. See Tex. R. App. P. 49.7. 
Appellant, Xavier Rolando Resendez, was convicted of bribery with enhancement
after a jury trial and was sentenced to fifteen years’ imprisonment and a fine of $5,000. 
Appellant appeals his conviction to this Court in three issues. We conclude appellant was
not entrapped, the trial court did not make improper comments and remarks, and
appellant’s counsel provided effective representation. We affirm the judgment of the trial
court. 
I. Background
In July of 2000, Michael Garza, a bail bondsman in Cameron County, Texas,
contacted the district attorney’s office and informed Rebecca Rubane, an assistant district
attorney, that his client, Xavier Resendez, had asked Garza if there was any way to
dispose of charges against him for cocaine possession “under the table” (i.e., by bribing
someone at the district attorney’s office). Garza agreed to record a telephone conversation
between himself and appellant and to provide appellant the name and telephone number
of an undercover agent posing as Rubane’s boyfriend in order to facilitate a sting
operation. Upon receiving the undercover agent’s name and number from Garza,
appellant immediately contacted the agent and discussed the price for getting his charge
dismissed. Appellant then called Garza one more time, complaining about the high price
being demanded. These calls were all recorded and transcribed.
Appellant and the undercover agent then had a series of telephone conversations
and personal meetings where appellant provided cash payments for the bribe. Appellant
also requested that the agent pass bribes to Rubane on behalf of his brother and his friend
and negotiated the price for each additional bribe. A total of $7,800 in cash was delivered
to the undercover agent by appellant for these bribes. All phone calls and personal
meetings involving appellant were recorded by the agent. Appellant was then arrested and
indicted for bribery. 
Appellant pled not guilty at trial, claiming that he was entrapped by the actions of
Garza, his bail bondsman and initial contact. While on the stand during the punishment
phase of the trial, appellant admitted to committing bribery. On appeal, appellant argues: 
(1) the evidence was legally insufficient to support his conviction for the offense of bribery,
as evidence of entrapment provided a defense to prosecution; (2) the trial court erred by
making improper comments and remarks regarding evidence presented at trial; and (3)
appellant’s trial counsel provided ineffective assistance of counsel. We address each
issue in turn.
II. Legal Sufficiency
Appellant argues by his first issue that the evidence is legally insufficient to support
his conviction for bribery. He claims that his defense of entrapment was successfully
raised and thus constitutes a bar to prosecution. The State argues that appellant waived
his right to challenge the sufficiency of the evidence when he admitted his guilt at the
punishment phase of trial and that, in any event, the evidence is sufficient to support his
conviction. 
A. The De Garmo Doctrine
We first address the question of waiver: does the De Garmo doctrine bar appellant
from challenging the legal sufficiency of the evidence? The State argues that because
appellant admitted guilt during the punishment phase of trial, the De Garmo doctrine
prevents him from challenging the legal sufficiency of the evidence. See De Garmo v.
State, 691 S.W.2d 657, 660–61 (Tex. Crim. App. 1985). After reviewing the parties’ briefs
and the case law, we conclude that appellant is not barred from challenging the legal
sufficiency of the evidence on appeal.
The De Garmo doctrine is a doctrine of waiver: a defendant’s admission of guilt at
the punishment phase of trial waives all non-jurisdictional errors that may have occurred
at the guilt phase of trial. See Reyes v. State, 971 S.W.2d 737, 737 (Tex. App.—Houston
[14th Dist.] 1998) (citing De Garmo, 691 S.W.2d at 660–61), rev’d, 994 S.W.2d 151, 152
(Tex. Crim. App. 1999). Despite the widespread attention given to the De Garmo doctrine,
its potency is far weaker—at least against legal-sufficiency challenges—than its reputation
has led some to believe.
We begin with Leday v. State, 983 S.W.2d 713, 720–26 (Tex. Crim. App. 1998). 
In Leday, the court of criminal appeals abandoned the De Garmo doctrine as applied to
certain constitutional, legal, and social guarantees—what the court described as “due
process and those individual rights that are fundamental to our quality of life.” Id. at 725. 
One of these “guarantees” is that the judgment in a criminal trial must be supported by
proof beyond a reasonable doubt. Id. Thus, under a literal reading of Leday, a legal-sufficiency challenge is not waived by a defendant’s admission of guilt at the punishment
phase. See id. at 725–26. 
Unfortunately, the holding in Leday is not as broad as it appears. Leday did not
involve a challenge to the sufficiency of the evidence; the issue was whether the trial court
erred by admitting evidence over the defendant’s objection. Id. at 715. Thus, the holding
in Leday is limited to the court’s resolution of the issue presented: a defendant’s admission
of guilt does not waive a court’s erroneous admission of evidence. See id. at 724–26. 
In reaching this holding, the Leday court addressed and refuted the numerous
justifications offered for the De Garmo doctrine, including, among other things, waiver,
estoppel, harmless error, characterization of the doctrine as a “common-sense rule of
procedure,” and any “analogy to the guilty plea.” See id. at 720–26. Although the court’s
analysis was strongly worded, the Leday decision did not overrule the De Garmo doctrine
completely. Leday involved only one issue: the admissibility of evidence. See id. at
724–26. To the extent Leday overruled the De Garmo doctrine, it did so only on that issue. 
          We are thus back where we started: does the De Garmo doctrine preclude
appellant from challenging the legal sufficiency of the evidence? We find the answer in the
holding of the De Garmo opinion itself. In De Garmo, the defendant admitted guilt at the
punishment phase of trial. De Garmo, 691 S.W.2d at 660. He then challenged the legal
sufficiency of the evidence on appeal. Id. at 660–61. After submission of the case, the
court of criminal appeals “carefully reviewed the evidence” and found it “more than
sufficient to sustain the verdict of the jury . . . .” Id. at 661. According to the court, the
evidence “would permit a rational trier of fact to find guilt beyond a reasonable doubt.” Id. 
          At this point, the holding of the De Garmo case ends and “the De Garmo doctrine”
begins. Despite its conclusion that the evidence was sufficient, the court stated that a
defendant such as De Garmo, who admits guilt at the punishment stage of trial, “not only
waives a challenge to the sufficiency of the evidence . . . but . . . also waives any error that
might have occurred during the guilt stage of the trial.” De Garmo, 691 S.W.2d at 661. 
This “breathtaking” statement—now called the De Garmo doctrine—is not the actual
holding of the De Garmo case: the De Garmo doctrine was not applied in the De Garmo
case. Leday, 983 S.W.2d at 722–23 (“Having made, without citation of authority, this
sweeping statement, De Garmo has a justifiable claim to its eponymous status in this area
of the law.”). As the Leday court later explained, “the De Garmo doctrine portion of the De
Garmo opinion is dictum, since the Court proceeded to consider and overrule the
sufficiency of the evidence point that De Garmo raised.” Id. at 723 n.14. 
    The State’s brief cites no post-De Garmo precedent from the court of criminal
appeals in which a legal sufficiency issue was held to be waived by a defendant’s
admission of guilt during the punishment phase of trial.


 This Court has also failed to
uncover any such precedent. We are thus faced with a choice between the “ill-written
dictum” of De Garmo and De Garmo’s actual holding. See Reyes, 994 S.W.2d at 153
(describing the De Garmo doctrine as “ill-written dictum”). For the reasons articulated in
Leday, which are excerpted below,


 we decline to follow the De Garmo doctrine. See id.
at 720–26. We hold that a defendant’s admission of guilt during the punishment phase of
trial does not waive errors related to the legal sufficiency of the evidence. 
In reaching this conclusion, we note, as did the court in Leday, that the De Garmo
doctrine is consequential only when an admittedly guilty person has been convicted. Id.
at 724. But “the ascertainment of truth is not the only objective of our law of criminal
procedure.” Id. “We as a people have deliberately chosen to adopt laws which interfere
with the truth-seeking function of the criminal trial.” Id. “Due process and those individual
rights that are fundamental to our quality of life co-exist with, and at times override, the
truth-finding function.” Id. at 725 (quoting Morrison v. State, 845 S.W.2d 882, 884 (Tex.
Crim. App. 1992)). Among these is the fundamental right that the judgment in a criminal
trial be supported by proof beyond a reasonable doubt. Id. This right is not waived by a
defendant’s admission of guilt after the jury has returned its verdict. See Leday, 983
S.W.2d at 726 (“Insofar as the De Garmo doctrine estops a defendant from raising on
appeal a violation of any of these guaranties, it cannot be justified on the ground that the
verdict of guilt was correct.”). 
Accordingly, we overrule this Court’s prior decisions to the extent they have applied
the De Garmo doctrine to legal-sufficiency challenges or suggested that the De Garmo
doctrine remains a viable bar to legal-sufficiency challenges. See, e.g., Nunez v. State,
117 S.W.3d 309, 321 (Tex. App.—Corpus Christi 2003, no pet.).


 In doing so, we believe
it is important to explain exactly where these decisions went awry. Take Nunez, for
instance. See id. Nunez relied on two cases in addition to De Garmo: Leday, 983
S.W.2d at 725–26 and Reyes, 994 S.W.2d at 153. Nunez, 117 S.W.3d at 321. Neither
of these cases applied the De Garmo doctrine to legal-sufficiency challenges. 
Nunez cited Leday for the proposition that the De Garmo doctrine still applies to
legal-sufficiency challenges. Id. But as we have already explained, Leday did no such
thing: Leday involved the admissibility of evidence, not a legal-sufficiency challenge. See
Leday, 983 S.W.2d at 715. Nunez’s reliance on Leday is even more inexplicable given that
Leday lambasted the De Garmo doctrine. See id. at 725 (“[T]he De Garmo doctrine . . .
cannot be justified on the ground that the verdict of guilt was correct.”). Leday did not
continue to apply De Garmo: it abrogated it. See id. at 725–26 (“We hold that the De
Garmo doctrine cannot be invoked to prevent . . . appellate review.”).
Nunez also cited Reyes, 994 S.W.2d at 153. According to Nunez’s interpretation
of Reyes, a “defendant’s admission of guilt at [the] punishment phase waives sufficiency
challenge[s].” Nunez, 117 S.W.3d at 321. Just like Leday, however, Reyes did not involve
a challenge to the sufficiency of the evidence. The issue in Reyes was whether the trial
court erred in dismissing a juror. Reyes, 994 S.W.2d at 152. Reyes therefore provides no
authority on legal-sufficiency issues or on whether the De Garmo doctrine applies to such
challenges.
In short, Nunez cited three cases, only one of which—De Garmo—actually dealt with
the issue of legal sufficiency. As explained above, the holding of the De Garmo case and
the De Garmo doctrine are two different things. Nunez followed the De Garmo doctrine,
not De Garmo’s holding. Today, we follow De Garmo’s holding and, like our sister courts,
abandon the De Garmo doctrine on legal-sufficiency issues.


 To the extent our prior
decisions have held to the contrary, we overrule them.
In overruling this Court’s precedent, we are mindful of the doctrine of stare decisis. 
Stare decisis dictates that we adhere to precedent and not disturb a settled principle of law
except upon the most urgent of reasons. McGlothlin v. State, 896 S.W.2d 183, 188–89
(Tex. Crim. App. 1995). We are compelled by the analysis of the Leday court and interpret
the preservation of “due process and those individual rights that are fundamental to our
quality of life” as an urgent reason for today’s holding. See Leday, 983 S.W.2d at 725–26.
In passing, we note that appellant has not challenged the factual sufficiency of the
evidence. Accordingly, this opinion does not decide what effect De Garmo, Leday, Reyes,
and their progeny have on factual sufficiency claims when a defendant admits guilt during
the punishment phase of trial. Such a decision would be warranted only if the issue of
factual sufficiency were presented to this Court. 
B. Entrapment
As we find no waiver, we now address appellant’s claim that the evidence against
him was legally insufficient to overcome his defense of entrapment. A review of the jury’s
rejection of an entrapment defense focuses on the legal sufficiency of the evidence. Flores
v. State, 84 S.W.3d 675, 681 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d); Torres v.
State, 980 S.W.2d 873, 875 (Tex. App.—San Antonio 1998, no pet.). We review legal
sufficiency challenges by considering all the evidence that supports the conviction and
reviewing it in the light most favorable to the verdict. Jackson v. Virginia, 443 U.S. 307,
319 (1979); see Sanders v. State, 119 S.W.3d 818, 829 (Tex. Crim. App. 2003). Our
review of the sufficiency of the evidence will turn on whether, viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact could have found against
the defendant on a defense issue beyond a reasonable doubt. Saxton v. State, 804
S.W.2d 910, 910 (Tex. Crim. App. 1991). 
Entrapment is a defense to prosecution when “the actor engaged in the conduct
charged because he was induced to do so by a law enforcement agent using persuasion
or other means likely to cause persons to commit the offense. Conduct merely affording
a person an opportunity to commit an offense does not constitute entrapment.” Tex. Pen.
Code Ann. § 8.06(a) (Vernon 2003); see Williams v. State, 848 S.W.2d 777, 781 (Tex.
App.–Houston [14th Dist.] 1993, no pet.) (providing a party with the phone number of a
contact, cash and marijuana merely affords the opportunity to commit a crime and does
not constitute entrapment). To satisfy the requirements of the entrapment defense, a party
must produce evidence demonstrating that (1) she was actually induced to commit the
offense, and (2) the inducement would have caused an ordinarily law-abiding person of
average resistance nevertheless to commit the offense. See England v. State, 887 S.W.2d
902, 908 (Tex. Crim. App. 1994). Because entrapment is a defense to prosecution rather
than an affirmative defense, the defendant has the initial burden to produce evidence
raising the defense; the burden then shifts to the State to disprove the defense beyond a
reasonable doubt. Tex. Pen. Code Ann. § 2.03 (Vernon 2003); Russell v. State, 904
S.W.2d 191, 197 (Tex. App.–Amarillo 1995, pet. ref’d). 
Appellant argues that the testimony at trial proved that Garza, who was acting as
an agent of law enforcement, entrapped appellant and caused him to commit the crime of
bribery.


 In support of this claim, appellant points to testimony from Garza regarding the
first recorded call. Garza admitted that appellant did not initially understand what he was
talking about when the subject of bribery was brought up. The transcript of this phone
conversation, which was admitted into evidence and read to the jury, is as follows:Garza: Remember what we talked about the other day?
 
Appellant: About what?
 
Garza: About what you were asking me - if something could be done.
 
Appellant: Ah-huh.
 
Garza: I’ve got a number and a name for you.
 
Appellant: Oh . . . what do you mean?
 
Garza: A guy for you to contact.
 
Appellant: I don’t understand. What?
 
. . .
 
Garza: If something could be done under the table . . .
 
Appellant: Ah-huh.
 
Appellant also points to testimony from his brother and himself that indicated it was Garza,
not appellant, who initially broached the idea of bribing the district attorney. 
          However, the trial record also includes testimony from Garza, asserting that
appellant first brought up the idea of bribing someone in relation to his cocaine charges.
The above conversation between Garza and appellant, in which Garza re-introduces the
previously-discussed topic of bribery, shows that, once appellant understood what Garza
was talking about, he vigorously assented (“Drop [the charges]! Right on!”) and began
asking for detailed instructions on how to initiate the conversation with Garza’s contact. 
Transcripts admitted as evidence show that the only other conversation appellant had with
Garza occurred immediately after appellant first contacted the undercover agent and
consisted of a brief exchange during which appellant primarily complained about the high
price he was being charged for the bribe. There is no evidence in the record of any further
interaction between appellant and Garza. The record also includes testimony from the
undercover agent who posed as the assistant district attorney’s boyfriend and arranged to
collect the bribes. His testimony, which was corroborated by transcripts, revealed that
appellant, after getting the contact information from Garza, called the agent repeatedly to
arrange the bribe, came to pre-arranged meetings, gave the agent a total of $7,800 in
cash, and on his own initiative, began arranging for additional bribes on behalf of two other
individuals.
          It is clear from the verdict that the jury did not choose to accept appellant’s
entrapment defense. See Adelman, 828 S.W.2d at 421 (“the trier of fact—not the
appellate court—is free to accept or reject all or any portion of any witness testimony.”). 
It is similarly clear from the evidence that a rational trier of fact could conclude beyond a
reasonable doubt, viewing the evidence in the light most favorable to the verdict, that
Garza’s conduct would not likely cause an otherwise unwilling person to bribe an official
or that it actually induced appellant to do so. See Flores v. State, 84 S.W.3d 675, 684
(Tex. App.–Houston [1st Dist.] 2002, pet. ref’d); Williams, 848 S.W.2d at 781. Accordingly,
we overrule appellant’s first issue. 
 
III. Improper Comments
          By his second issue, appellant argues that the trial court erred by making improper
comments and remarks in violation of article 38.05 of the code of criminal procedure. See 
Tex. Code Crim. Pro. Ann. art. 38.05 (Vernon 1979). Appellant complains in his brief
about three separate instances in which the trial court made comments from the bench. 
In the first instance, appellant’s counsel objected to a line of questioning by the State; the
court noted that appellant’s counsel had been engaged in similarly inappropriate
questioning tactics earlier. On the second occasion, appellant’s counsel objected to a
question on grounds that essentially informed his witness how to answer, for which the
court admonished counsel to “quit testifying.” In the third instance, the court noted that
appellant was being unresponsive in his answers to the prosecutor. Appellant claims that
these comments violate article 38.05, which reads in part, “the judge shall not . . . make
any remark calculated to convey to the jury his opinion of the case.” Id. 
          It is clear from the record that these comments do not violate this section of the
code of criminal procedure, as they do not convey the judge’s opinion about the case.
Further, the trial record demonstrates appellant’s counsel failed to object to any of the
these comments. In order to preserve an error for appellate review, a party must make an
objection to the court and the court must explicitly or implicitly make an adverse ruling or
refuse to rule on that objection. Tex. R. App. P. 33.1; see Flores v. State, 871 S.W.2d 714,
723 (Tex. Crim. App. 1993). Thus, appellant has waived this complaint by not stating his
objection with specificity and preserving it for appeal. Mestiza v. State, 923 S.W.2d 720,
724 (Tex. App.—Corpus Christi 1996, no pet.) (“[a] timely proper objection is necessary to
preserve error concerning a trial judge's comment”). 
IV. Ineffective Assistance of Counsel
          By his third issue, appellant contends he was not afforded effective assistance of
counsel. He points to the same three comments from the bench he complained of in his
second issue and argues that his attorney demonstrated his ineffectiveness by failing to
object to the trial court’s improper comments and remarks. Because this argument is
based on constitutional considerations, appellant’s admission of guilt does not affect his
right to bring an appeal on this ground. See Leday, 983 S.W.2d at 725–26; Reyes, 994
S.W.2d at 153.
          This Court has adopted the two-pronged Strickland test to determine whether
representation was so inadequate that it violated a defendant’s Sixth Amendment right to
counsel. See Strickland v. Washington, 466 U.S. 668, 684 (1984) (recognizing the Sixth
Amendment right to counsel); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App.
1986); Alfano v. State, 780 S.W.2d 494, 495 (Tex. App.—Corpus Christi 1989, no pet.). 
To establish ineffective assistance of counsel, appellant must show: (1) his attorney’s
representation fell below an objective standard of reasonableness; and (2) there is a
reasonable probability that, but for his attorney’s errors, the result of the proceeding would
have been different. Strickland, 466 U.S. at 687; Hernandez, 726 S.W.2d at 57. Whether
this test has been met is to be judged on appeal by the totality of the representation, not
by isolated acts or omissions. Rodriguez v. State, 899 S.W.2d 658, 665 (Tex. Crim. App.
1995). 
          The burden is on appellant to prove ineffective assistance of counsel by a
preponderance of the evidence. Munoz v. State, 24 S.W.3d 427, 434 (Tex. App.—Corpus
Christi 2000, no pet.). Appellant must overcome the strong presumption that counsel’s
conduct fell within the wide range of reasonable professional assistance. Id. Also, the acts
or omissions that form the basis of appellant’s claim of ineffective assistance must be
evidenced by the record. See Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App.
1999).           
          As we have already concluded, the remarks from the bench did not constitute
improper comments, and thus, counsel’s failure to object to them does not constitute error. 
Also, the record affirmatively demonstrates that throughout the trial, counsel more than
adequately represented and protected the interests of his client. He filed a motion in limine
before the trial to exclude a prior arrest, filed a motion to dismiss based on the defense of
entrapment, and filed a motion to dismiss based on a violation of the attorney-client
privilege by the State. He presented witnesses and cross-examined the State’s witnesses
vigorously, raising an issue as to whether the audio tapes implicating his clients could have
been altered, and introduced evidence that allegedly demonstrated that Garza had a
financial motive for entrapping appellant. Counsel asserted objections throughout the trial
and received favorable rulings on some of them, including the first instance appellant
complains of above. He also submitted jury instructions to the court which included an
instruction on the defense of entrapment, as well as further instructions ensuring that the
jury knew it was to disregard any comments from the judge expressing an opinion about
the guilt or innocence of the defendant. 
          Because the comments from the bench were not improper, appellant cannot
demonstrate that the result of the trial would have been different had his desired objections
been made. See Strickland, 466 U.S. at 687. Accordingly we overrule appellant’s
remaining issue on appeal, and AFFIRM the judgment of the trial court.       
                                                                 _____________________
                                                                           DORI CONTRERAS GARZA,
                                                                           Justice
 
Concurring and Dissenting 
Opinion by Justice Castillo.
 
Publish.
Tex.R.App.P. 47.2(b)
Opinion delivered and filed 
this the 3rd day of March, 2005.