Opinion
issued June 10, 2010

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

In The

Court of
Appeals

For The

First District
of Texas

————————————
 
 


NO. 01-06-00659-CR

————————————
 
 


SHAMIKA YVONNE SATCHELL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 


 
 

 
 
 



On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 983387

 


 
 

 
 
 



O P I N I O N

A jury found appellant, Shamika
Yvonne Satchell, guilty of the offense of possession of Phencyclidine (“PCP”)
weighing at least 400 grams by aggregate weight,[1]
and the trial court assessed her punishment at confinement for 10 years,
suspended the sentence, and placed appellant on community supervision for 10
years.  In three points of error,
appellant contends that the evidence is legally and factually insufficient to
support her conviction and the trial court erred in instructing the jury that
it could find appellant guilty of the offense of possession of PCP as a lesser-included
offense of the offense of possession with intent to deliver PCP.[2]

          We
affirm.

Background

Houston Police Department (“HPD”)
Narcotics Investigator A. Vanderberry testified that a confidential informant,
whom he knew from past experience to be “reliable and credible,” had informed
him that “an assault rifle and narcotics were being kept” at appellant’s
apartment and PCP was being sold from there. 
Vanderberry began surveillance of the apartment and set up a “controlled
buy,” in which the informant would buy PCP from appellant’s boyfriend, Taj
Smith, at the apartment.  During
surveillance of the controlled buy, Vanderberry saw a black female enter the
apartment and remain there while the informant made the buy, but he could not
identify the woman as appellant. 
Vanderberry obtained a combination search warrant for the apartment and
arrest warrant for Smith.  When
Vanderberry’s team later began surveillance on the apartment in preparation for
executing the warrants, he saw Smith driving appellant’s car, with appellant
and two children as his passengers. 
Shortly after they had arrived at appellant’s apartment at 11:00 p.m.,
Vanderberry and his team detained appellant, arrested Smith, and executed the search
warrant.  

When the officers entered to search the
apartment, “the smell of PCP was so strong” that they had “problems breathing,
their eyes were tearing up.”  Vanderberry
explained that PCP has “a very distinct odor” and a “very harsh chemical
smell.”  In a closed cabinet under the
kitchen sink, officers found a Pine-Sol bottle and two Gatorade bottles
containing PCP liquid, between 100 and 200 vials used to distribute PCP, a steel
marijuana grinder, latex gloves for handling PCP, and a “baby bottle” with
trace amounts of codeine.  On the kitchen
countertop, officers found “loose-leaf” marijuana, a “Delaware Punch” bottle
containing codeine, and a receipt for the purchase of ten vanilla extract bottles,
which are commonly used to distribute PCP. 
Vanderberry explained that marijuana is commonly used to distribute PCP
by lacing the marijuana with PCP.  In
another closed kitchen cabinet, officers found two “Pyrex beakers” with cocaine
residue.  Stuffed inside or behind the
couch in the living room, officers found an assault rifle and two ammunition
clips.  In the master bedroom in a closed
drawer in a nightstand, officers found ecstasy and hydrocodone pills in bottles
with Smith’s name on the labels, $1,360 in cash, and Smith’s identification.  Vanderberry opined that the apartment was “a
distribution center for narcotics.”  

On cross-examination, Vanderberry
conceded that Smith was “the target of the investigation” and the person that
he believed to be the “drug dealer.”  He
did not observe appellant “handle [the] drugs” or “deal the drugs.”  The confidential informant provided “no
intelligence” about appellant but relayed that appellant was “not engaged in
any activity other than being there when the deal was going on.”  Appellant’s fingerprints were not found on
any of the items of contraband because none of them was “conducive” for usable
prints.  Vanderberry agreed that
appellant did not flee, take evasive actions, get nervous, or give “shifty,
inconsistent answers” when his team detained her. 

HPD Narcotics Officer R. Chaison
testified that over several days during his surveillance of appellant’s
apartment, he observed significant “foot traffic” in and out of the apartment.  As he helped to execute the search warrant, Chaison
smelled “a strong musty, musty smell” coming from appellant’s apartment.  He obtained consent from appellant to search
her car, where he found a “marijuana cigar in the ashtray” and a “pharmaceutical”
bottle of codeine under the driver’s seat. 
On cross-examination, Chaison admitted that he did not see appellant
handle or sell narcotics.  He confirmed
that Smith was the target of the investigation, and appellant was not “on the
radar screen.”  He could provide no
“direct” evidence that appellant solicited, assisted, aided, or encouraged
Smith’s dealing narcotics. 

HPD Narcotics Officer D. De Blanc
testified that when the warrants were served, he detained appellant outside of
her apartment and informed her of her legal rights.  After arresting appellant, De Blanc videotaped
an interview of her regarding the narcotics.  During the interview, appellant stated that
she did not “know anything about PCP,” the narcotics were “not hers,” and she
had never used or sold narcotics.  

Federal Bureau of Alcohol, Tobacco,
and Firearms Agent M. Daughtery testified that she later interviewed appellant
regarding a federal investigation of Smith. 
Daughtery explained that after appellant “initially denied knowing
anything” about the narcotics found in her apartment, she “acknowledged that
she did know about the narcotics” and she “knew [Smith] was dealing drugs,” but
she denied that she was involved with or used the narcotics.  Appellant also admitted that she and the
children went to another room whenever Smith’s friends “came over to smoke,”
Smith had no job but “had a lot of money” and helped her with the rent, Smith
carried a firearm or had one nearby when he “dealt dope,” she had seen an assault-rifle
type firearm at their prior residence, and Smith had once left a handgun in her
car.

Kreshelle Dixon, a co-worker of
appellant, testified that appellant orally subleased the apartment from her.  Appellant initially moved into the apartment
with her daughter, and Smith moved in a “short time” later and had been at the
apartment about eight months at the time the officers executed the warrant.

HPD Crime Lab Chemist R. Rodriguez
testified that the PCP recovered from appellant’s apartment weighed 1.44
kilograms, or a little over 1,400 grams, and the codeine weighed 977.5
grams.  Rodriguez agreed that PCP has a
“strong odor,” which she described as “an ether-type of smell.”

Appellant testified that when Officer
De Blanc initially detained her, she had responded “No” when he asked if she
was “Kreshelle Dixon.”  She then
identified herself and stated that she resided at the apartment number listed
in the warrant.  When De Blanc told appellant
that PCP was being sold out of the apartment, she told him that she did not
“know anything about what’s going on.”  She
explained that she was not familiar with PCP and had not seen the bottles of
narcotics and narcotics paraphernalia found in the cabinet under the kitchen
sink in her apartment.  Appellant
identified her car for De Blanc, and she gave consent for it to be searched.  After she saw De Blanc remove the bottle of codeine
from beneath the driver’s seat of her car, she denied that it was hers or that
she had seen it before and explained that Smith also drove her car.  

Appellant also denied admitting to Agent
Daughtery that she knew that Smith had been dealing narcotics, and she explained
that even if someone “should have known” about the PCP, she “didn’t know
[Smith] was selling drugs.”  She also denied
knowledge of the bottles of PCP in the kitchen cabinet because she kept her
cleaning supplies elsewhere.

On cross-examination, appellant
conceded that the bottles of PCP were found in “her apartment,” but she denied
knowing that the people who came to her apartment were there to buy PCP from
Smith.  She admitted that she had told
Officer De Blanc that the PCP was “not hers” but did not tell him that she
“never saw” the PCP.  She agreed that she
and Smith shared their cars and Smith helped her with the rent.  When a container of PCP was opened in court,
appellant agreed that it “smelled strongly,” but she explained that when she smelled
the odor in the apartment, it smelled like “mildewy carpet.”

Sufficiency of the Evidence

In her first and second points of
error, appellant argues that the evidence is legally and factually insufficient
to support her conviction because the “logical force” of the evidence is
insufficient to establish that she knowingly possessed the PCP or “act[ed] with
the intent to promote or assist Smith in possessing the PCP.”

We review the legal sufficiency of
the evidence by considering all of the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307,
318–19, 99 S. Ct. 2781, 2788–89 (1979)). 
Our role is that of a due process safeguard, ensuring only the
rationality of the trier of fact’s finding of the essential elements of the
offense beyond a reasonable doubt.  See Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988); Allen v. State,
249 S.W.3d 680, 688 (Tex. App.—Austin 2008, no pet.).  Our duty requires us to “ensure that the
evidence presented actually supports a conclusion that the defendant committed”
the criminal offense of which she is accused. 
Williams, 235 S.W.3d at 750.  “If, based on all the evidence, a reasonably
minded jury must necessarily entertain a reasonable doubt of the defendant’s
guilt, due process requires that we reverse and order a judgment of
acquittal.”  Fisher v. State, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993)
(quoting Narvaiz v. State, 840 S.W.2d
415, 423 (Tex. Crim. App. 1992)); see
also Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).  In our analysis, we give deference to the
responsibility of the fact-finder to fairly resolve conflicts in testimony, to
weigh evidence, and to draw reasonable inferences from the facts.  Williams,
235 S.W.3d at 750.  If the undisputed
facts allow only one logical inference, neither jurors nor the reviewing court
may disregard those facts.  Evans v. State, 202 S.W.3d 158, 162–63 (Tex.
Crim. App. 2006).  Also, if
circumstantial evidence provides no more than a suspicion, the fact-finder may
not reach a speculative conclusion.  Louis v. State, 159 S.W.3d 236, 246
(Tex. App.—Beaumont 2005, pet. ref’d).  

In a factual sufficiency review, we
view all the evidence in a neutral light, both for and against the finding, and
set aside the verdict if the proof of guilt is so obviously weak as to
undermine confidence in the jury’s determination, i.e., that the verdict seems
“clearly wrong and manifestly unjust,” or the proof of guilt, although legally
sufficient, is nevertheless against the great weight and preponderance of the
evidence.  Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App.
2006).  We note that a jury is in the
best position to evaluate the credibility of witnesses, and we afford due
deference to the jury’s determinations.  Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006).  Although we
should always be “mindful” that a jury is in the best position to decide the
facts and that we should not order a new trial simply because we disagree with
the verdict, it is “the very nature of a factual-sufficiency review that . . .
authorizes an appellate court, albeit to a very limited degree, to act in the
capacity of a so-called ‘thirteenth juror.’” 
Watson, 204 S.W.3d at 414,
416–17.  Thus, when an appellate court is
“able to say, with some objective basis in the record, that the great weight and preponderance of the
(albeit legally sufficient) evidence contradicts the jury’s verdict[,] . . . it
is justified in exercising its appellate fact jurisdiction to order a new
trial.”  Id. at 417.

An individual commits the offense of
possession of PCP if she “knowingly or intentionally possesses” PCP by “aggregate
weight, including adulterants or dilutants” in an amount of “400 grams or more.”  Tex.
Health & Safety Code Ann. §§ 481.102(8), 481.115(a), (f) (Vernon Supp.
2009).  To prove possession, the State
must prove that an accused (1) exercised actual care, custody, control, or management
over the substance and (2) knew that the matter possessed was a controlled
substance.  Tex. Penal Code Ann. § 1.07(39) (Vernon Supp. 2009); Evans, 202 S.W.3d at 161.  Possession is a voluntary act if the possessor
knowingly obtains or receives the thing possessed or is aware of her control of
the thing for a sufficient time to permit her to terminate her control.  Tex.
Penal Code Ann. § 6.01(b) (Vernon 2003).  It is well settled that “mere presence in the
vicinity of contraband that is being used or possessed by others does not, by
itself, support a finding that the accused is a joint possessor or a party to [an]
offense.”  Villarreal Lopez v. State, 267 S.W.3d 85, 91 (Tex. App.—Corpus
Christi 2008, no pet.); see also Garcia
v. State, 218 S.W.3d 756, 763 (Tex. App.—Houston [1st Dist.] 2007, no
pet.); Allen v. State, 249 S.W.3d
680, 691 (Tex. App.—Austin 2008, no pet.).  Moreover mere presence does not make an
accused a party to joint possession “even if the accused knows of the existence
of the contraband and has knowledge of an offense.”  Villarreal
Lopez, 267 S.W.3d at 91; see also
Garcia, 218 S.W.3d at 763; Allen,
249 S.W.3d  at 691.  Rather, an accused’s presence at the scene of
an offense, while not sufficient to support her conviction, is “a circumstance
tending to prove guilt which, combined with other facts, may suffice to show
that the accused was a participant.”  Thomas v. State, 645 S.W.2d 798, 800
(Tex. Crim. App. 1983).  

Evidence in a knowing possession of
contraband case must amount to more than mere conjecture.  Dickey
v. State, 693 S.W.2d 386, 389 (Tex. Crim. App. 1984).  When, as here, the accused is not in
exclusive possession of the place where contraband is found, additional
independent facts and circumstances must “link” the accused to the contraband
“in such a way that it can be concluded that the accused had knowledge of the
contraband and exercised control over it.” 
Roberson v. State, 80 S.W.3d
730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  The evidence must demonstrate that the link
between the accused and the contraband “generates a reasonable inference that
the accused knew of the contraband’s existence and exercised control over
it.”  Id.  In other words, the State must establish that
the accused’s connection with the narcotics was more than just fortuitous. 
Poindexter v. State, 153 S.W.3d 402, 405–06 (Tex. Crim. App.
2005).  The Texas Court of Criminal
Appeals has explained that the purpose of the links rule is to “protect the
innocent bystander from conviction based solely upon [her] fortuitous proximity
to someone else’s [narcotics].”  Id. at 406.  The links rule “simply restates the
common-sense notion that a person—such as a father, son, spouse, roommate, or
friend—may jointly possess property like a house but not necessarily jointly
possess the contraband found in that house.” 
Id.  

Texas courts have identified “many
non-exhaustive factors” that may demonstrate a link to contraband.  Roberson,
80 S.W.3d at 735.  The factors include whether
the narcotics were (1) in plain view; (2) conveniently accessible to the
accused; (3) in a place owned, rented, possessed or controlled by the accused;
(4) in a car driven by the accused; (5) in close proximity to the accused; or
(6) found in an enclosed space; and whether (7) the odor of narcotics was
present; (8) drug paraphernalia was in view of or found on the accused; (9) the
accused was present; (10) the accused’s conduct indicated a consciousness of
guilt (e.g., furtive gestures, flight, conflicting statements); (11) the
accused had a special relationship to the drug; (12) the accused possessed
other contraband or narcotics when arrested; (13) the accused was under the
influence of narcotics when arrested; (14) the accused made affirmative
statements connecting her to the contraband; and (15) the accused was found
with a large amount of cash.  Evans, 202 S.W.3d at 162 n.12; Roberson, 80 S.W.3d at 735 n.2; Villegas v. State, 871 S.W.2d 894, 896–97
(Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).  These factors constitute “a shorthand way of
expressing what must be proven to establish that [narcotics] were possessed
knowingly.”  Roberson, 80 S.W.3d at 735.  The
number of linking factors present is not as important as the “logical force”
they create to prove that an offense was committed.  Id.  The absence of various links does not
constitute evidence of innocence to be weighed against the links present.  Hernandez
v. State, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976); James v. State,
264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d).

In support of her arguments that the
evidence is legally and factually insufficient to support her conviction,
appellant asserts that it appears she was arrested only because the narcotics
were found in “her apartment” and she lived there; although she resided at the
apartment and was present when the PCP was found, the PCP was not in plain view
but in “three closed containers in a closed cabinet under the kitchen sink”; she
was not the “target” of the investigation and had a “respectable job” and no criminal
history; she was not “under the influence of drugs” and had no “drugs or
paraphernalia” on her person; she was naïve and not “street smart”; she did
nothing to indicate a consciousness of guilt; although the PCP had a “strong
odor,” she was not familiar with it and thought it smelled like “mildewy carpet,”
and the odor was not such that an “ordinary person” would be familiar with it;
the presence of marijuana in plain view was not automatically suggestive that
PCP was present or that she knew PCP was present; and the presence of other
narcotics and cash in “[non-obvious] or in closed spaces” did “nothing to show she
knew about the PCP.”  

Viewing the evidence in the light
most favorable to the verdict, appellant admitted that she leased and resided
at the apartment where the officers found the PCP.  Kreshelle Dixon testified that she subleased
the apartment to appellant and Smith subsequently moved into the apartment with
appellant and her child.  Being the owner
of a residence in which contraband is found may constitute a significant factor
in establishing an accused’s knowing possession of narcotics.  See
Moulden v. State, 576 S.W.2d 817, 820
(Tex. Crim. App. 1978).  Agent Daughtery
testified that after appellant initially denied knowing anything about the
narcotics found in her apartment, she “acknowledged that she did know about the
narcotics.”  She also knew that Smith was
“dealing drugs.”  Thus, the jury could
have reasonably inferred that appellant, knowing that Smith was “dealing”
narcotics, allowed him to move into her apartment, where he then stored and
sold PCP.  

The evidence of appellant’s knowledge
of the narcotics found in her
apartment, her knowledge that Smith was “dealing drugs,” and her allowing Smith
to move into the apartment that she had subleased, supports an implied finding
by the jury that she knowingly exercised control over the PCP.  See Tex. Penal Code Ann. § 6.01(b).  Thus, the evidence in this case stands in
contrast to that in Allen, in which
the Austin Court of Appeals held legally insufficient to support a conviction
for the offense of possession of cocaine evidence that the defendant was
present in an apartment in which she did not reside, a platter containing cocaine
was found in the apartment, and her fingerprint was on the platter, but no
evidence suggested when she might have handled the platter.  249 S.W.3d at 695–97, 703. 

Here, moreover, the confidential
informant reported that appellant was present during the controlled buy, and Officer
Chaison testified that appellant was present during the “foot traffic” that was
indicative of narcotics trafficking.  A
significant quantity of PCP—over 1,400 grams—was found in a kitchen cabinet that
was accessible to appellant.  Marijuana
and codeine were found in plain view while cocaine residue, a marijuana
grinder, gloves, vials, an assault rifle, ecstasy pills, and hydrocodone pills
were found elsewhere throughout appellant’s apartment, and codeine was found in
her car.  The odor of PCP so permeated
the apartment that the arresting officers had trouble breathing.  We conclude that the “logical force” of these
facts, together with appellant’s admissions that she knew about the narcotics,
knew Smith was “dealing” narcotics, and allowed him to move into her apartment,
is sufficient to support a reasonable inference that appellant knowingly
possessed the PCP.  See Roberson, 80 S.W.3d
at 735.  Accordingly, we hold that the
evidence is legally sufficient to support appellant’s conviction for the
offense of possession of PCP.

Viewing the evidence in a neutral
light, Vanderberry did testify that Smith was the “target” of the investigation
and “in control” of the apartment and appellant was not “on the radar screen” of
the investigation until he determined that she resided at the apartment.  Also, the confidential informant did report that
appellant did not participate in the controlled buy.  It is also true that the evidence shows that
the odor of PCP, described as “chemical,” “musty”, “ether-like” and “mildewy,”
is not common.  And, the PCP was not found
in plain view, but rather in the closed, under-sink kitchen cabinet.  Appellant denied using or selling narcotics,
no narcotics or paraphernalia were found on her person, and she did not appear
to be under the influence of narcotics or exhibit a consciousness of guilt when
she was arrested.  Appellant also denied
admitting to Agent Daughtery that she knew about the narcotics or knew that
Smith was “dealing drugs.” However, as noted above, Daughtery testified that appellant
admitted that she knew that Smith was “dealing” narcotics, and yet she allowed
him to move into the apartment that she had subleased, where Smith then stored
and sold PCP.  Again, these facts support
an implied finding by the jury that appellant knowingly exercised control over
the PCP.  See Tex. Penal Code Ann.
§ 6.01(b).  We conclude that the verdict
is not “clearly wrong and manifestly unjust” and the proof of guilt is not
against the great weight and preponderance of the evidence.  See
Watson, 204 S.W.3d at 414–15.  Accordingly,
we hold that the evidence is factually sufficient to support appellant’s
conviction of the offense of possession of PCP.

We overrule appellant’s first and
second points of error. 

Lesser-Included Offense

In her third point of error,
appellant argues that the trial court erred in instructing the jury on the lesser-included
offense of possession of PCP because “there was no evidence that if appellant
was guilty at all, she was only guilty of the lesser offense.”

A Harris County grand jury returned a
true bill of indictment, accusing appellant of the offense of possession with
intent to deliver PCP.  However, at the
closing of the evidence, the trial court, at the State’s request, instructed
the jury on the lesser-included offense of possession of PCP.  In support of her argument that the trial court
erred in giving the instruction, appellant relies on Arevalo v. State, 943 S.W.2d 887, 890 (Tex. Crim. App. 1997).  She asserts that the Texas Court of Criminal
Appeals’ holding in Arevalo requires
that before a trial court may instruct a jury on a lesser-included offense, the
lesser-included offense must have been “included within the proof necessary to
establish the offense charged” and
“some evidence must exist in the record that if the defendant is guilty, [she]
is guilty only of the lesser offense.”  Appellant concedes that the offense of possession
of PCP is a lesser-included offense of possession with intent to deliver PCP,
but she asserts that there is “no evidence from which a jury could rationally
acquit [appellant] of the greater offense while convicting her of the lesser
offense.”  Appellant’s reliance on Arevalo is misplaced.  Here, the State requested the instruction,
and in Grey v. State, the Texas Court
of Criminal Appeals overruled Arevalo,
holding that to obtain a lesser-included offense instruction, the State need
only show that its requested instruction describes a lesser-included offense of
the charged offense.  298 S.W.3d 644, 651
(Tex. Crim. App. 2009).  

Appellant conceded that the offense
of possession of PCP is a lesser-included offense of possession with intent to
deliver PCP, and the State was not required to show “some evidence” in the
record that appellant was guilty only of the offense of possession of PCP.  Id.  Accordingly, we hold the trial court did not
err in instructing the jury on the lesser-included offense of possession of
PCP. 

We overrule appellant’s third point
of error.

Conclusion

          We
affirm the judgment of the trial court. 

 

 

 

                                                                             Terry
Jennings

                                                                             Justice

 

Panel
consists of Justices Jennings, Alcala, and Massengale.

 

Publish.  Tex.
R. App. P. 47.2(b).











[1]           See
Tex. Health & Safety Code Ann.
§§ 481.102(8), 481.115(f) (Vernon Supp. 2009).

 





[2]           See
id. § 481.112 (Vernon Supp. 2009).